## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

IN RE FARO TECHNOLOGIES, INC.   ) Civil Action No. 6:05-cv-1810-ACC-DAB
SECURITIES LITIGATION   )

---

**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND SUPPORTING MEMORANDUM OF LAW**

---

Scott R. Shepherd
Fla. Bar No. 069655
Shepherd, Finkelman, Miller
 & Shah, LLP
1640 Town Center Circle
Weston, FL 33326
(Telephone) (954) 943-9191
(Facsimile) (954) 943-9173
(Electronic mail) sshepherd@sfmslaw.com

(Additional Counsel on Signature Page)

Attorneys for Lead Plaintiff,
Kornitzer Capital Management, Inc.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-vi

I.     PRELIMINARY STATEMENT AND STATEMENT OF RELIEF REQUESTED . . . . . 1

II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT . . . . . . . . . . . . . . . . . . 2

III.   THE SETTLEMENT SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    The Settlement Is Entitled To A Presumption Of Fairness . . . . . . . . . . . . . . . . . . 5

       B.    Application Of The Eleventh Circuit Fairness Factors Warrants
             Approval Of The Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

             1.    The Stage of the Proceedings at Which Settlement Was Achieved
                   Supports Approval of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

             2.    The Likelihood of Success at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             3.    The Settlement Is Within the Range of Possible Recovery . . . . . . . . . . . 11

             4.    The Complexity, Expense and Duration of the Litigation . . . . . . . . . . . 12

             5.    Extent and Substance of Opposition to the Settlement . . . . . . . . . . . . . . 14

       C.    Notice to Class Members and Opportunity to Present Their Views . . . . . . . . . . 15

IV.    THE PLAN OF ALLOCATION SHOULD BE APPROVED . . . . . . . . . . . . . . . . . . . . . 15

       A.    Structure of the Plan of Allocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       B.    The Plan Is Fair, Reasonable and Adequate and Should Be Approved . . . . . . . . 16

V.   COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
     EXPENSES SHOULD BE APPROVED ................................... 17

     A.   The Requested Counsel Fees Are Appropriate and Should Be Awarded ...... 17

     B.   The Relevant Factors Considered by the Eleventh Circuit Dictate that the
          Requested Fee Is Reasonable ....................................... 19

          1.   The Time and Labor Required ................................ 20

          2.   The Contingent Nature of the Representation and the Preclusion
               of Other Employment ....................................... 20

          3.   The Novelty and Difficulty of the Questions Involved and the Skill
               Required to Perform the Legal Services Properly ................. 22

          4.   The Customary Fee and Awards in Similar Cases ................. 22

          5.   The Amount Involved and the Results Achieved ................. 23

          6.   The Experience, Reputation and Ability of Counsel ............... 23

          7.   Undesirability of the Case .................................... 23

          8.   Nature and Length of Relationship with the Client ................ 24

          9.   The Reaction of the Class Supports the Requested Fee Award ........ 24

     C.   Award of Expenses .............................................. 25

VI.  CONCLUSION ...................................................... 25

VII. CERTIFICATION OF COUNSEL ....................................... 25

# TABLE OF AUTHORITIES

## Cases

*Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017,
  2002 WL 1162422 (S.D. Fla. May 7, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) . . . . . . . . . . . . . . . . 23

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D.Fla. 1988) . . . . . . . . . . . . . . . 20-21

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) . . . . . . . . . . . . . . . . . 17, 19-20

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Diaz v. Hillsborough County Hosp. Authority*, 8:90-CV-120,
  2000 WL 1682918 (M.D.Fla. Aug. 7, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Di Giacomo v. Plains All Am. Pipeline*, No. H-99-4137,
  2001 WL 34633373 (S.D. Tex. Dec. 18, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622 (E.D. Pa. 1986) . . . . . . . . . . . . . . . . . . . . 11

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Francisco v. Numismatic Guaranty Corp. of America*,
  No. 06-61677-CIV, 2008 WL 649124 (S.D.Fla. Jan. 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . 18

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y. 1985),
  *aff'd in part and rev'd in part on other grounds*, 818 F.2d 179 (2d Cir. 1987) . . . . . . . . . . . 12

*In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) . . . . . . . . . . . 14

*In re Baldwin-United Corp.*, 607 F. Supp. 1312 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 18

*In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . 24

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000),
  *aff'd*, 267 F.3d 743 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*In re Motorsports Merch. Antitrust Litig.*,
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Oracle Sec. Litig.*, No. C-90-0931-VRW,
  1994 WL 502054 (N.D. Cal. June 18, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997),
  *aff'd*, 117 F.3d 721 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . 19, 24

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525 (E.D. Pa. 1990)) . . . . . . . . . . . 12

*In re TECO Energy Sec. Litig.*,
  Case No. 8:04-CA-1948-T-27EAJ (October 18, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Telik Sec. Litig.*, No. 07-CV-4819,
  2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel
  Fire Litig.*, 56 F.3d 295 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Jones v. Cent. Soya Co.*, 748 F.2d 586 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 16

*Lewis v. Newman*, 59 F.R.D. 525 (S.D.N.Y. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

-iv-

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660 (M.D. Ala. 1988) . . . . . . . . . . . . . . . . . 15

*Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M),
2003 WL 21277124 (N.D. Okla. May 28, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337 (N.D. Tex. 1976) . . . . . . . . . . . . 16

*Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . 14

*Stahl v. MasTec, Inc.*, No. 8:05-CV-1265, 2008 WL 2267469
(M.D.Fla. May 20, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sterling v. Stewart*, 158 F.3d 1199 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Warren v. Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Whitford v. First Nationwide Bank*, 147 F.R.D. 135 (W.D. Ky. 1992) . . . . . . . . . . . . . . . . 7, 8

*Woodward v. NOR-AM Chem. Co.*, No. 94-0780-CB,
1996 WL 1063670 (S.D. Ala. May 23, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Young v. Katz*, 447 F.2d 431 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151 (S.D.N.Y. 1971) . . . . . . . . . . . . . . . . . . 12

**Statutes And Rules**

15 U.S.C. § 77z . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**<u>Other Authorities</u>**

*Manual for Complex Litigation* §§ 30.41-30.42 (3d ed. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* §11.41 (4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    **PRELIMINARY STATEMENT AND STATEMENT OF RELIEF REQUESTED**

Lead Plaintiff, Kornitzer Capital Management ("KCM"), respectfully submits this Motion and Memorandum of Law, together with the accompanying Declarations of James E. Miller, Esquire ("Miller Decl."), which is attached as Exhibit "A," and Paul Mulholland, CPA, CVA ("Mulholland Decl."), which is attached as Exhibit "B," pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and this Court's Order Preliminarily Approving Settlement and Providing for Notice dated June 2, 2008 (the "Notice Order"). Pursuant to this Motion and Memorandum, Lead Plaintiff hereby requests that the Court approve the proposed settlement ("Settlement") of this action, the proposed Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses.

The Settlement creates a fund in the amount of $6,875,000 in cash with accrued interest (the "Settlement Fund"). The terms of the Settlement are described in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), which, in accordance with the Notice Order, was mailed to all members of the settlement class ("Class"), who could be identified. Mulholland Decl. at ¶ 3. Notice has been provided directly to over 55,000 Class members and no Class member has objected to any terms of the settlement or requested exclusion from the settlement. *Id*. at ¶ 9. Moreover, there is no reason to question the fairness of the Settlement since it was negotiated at arm's length by the parties with the assistance of The Honorable Nicholas H. Politan (ret.), a former United States District Judge for the District of New Jersey, who is one of the most respected and skilled mediators in this field. Miller Decl. at ¶¶ 21-25, 39; *see also In re Telik Sec. Litig.*, No. 07-cv-4819, 2008 WL 4198516 * 4 (S.D.N.Y. Sept. 10, 2008)(referencing Judge Politan's service as a mediator in a number of securities class actions

-1-

and noting that, since Judge Politan was involved in the negotiations, they were "clearly the result of arm's-length bargaining").  For these reasons and all of the reasons explained below and in the accompanying Declarations, Lead Plaintiff respectfully requests that the Court: (i) approve the Settlement, (ii) approve the Plan of Allocation, (iii) grant Lead Counsel's application for attorneys' fees and expenses, and (iv) enter the proposed Final Judgment and Order of Dismissal with Prejudice ("Final Approval Order"), which is attached as Exhibit "C" to this Motion and Memorandum.

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

The Settlement is the result of almost three (3) years of litigation that included, among other things, Lead Counsel: (i) conducting a detailed investigation of this case, including detailed interviews with over fifty (50) former employees of Defendant, FARO Technologies, Inc. ("FARO"), consulting with accountants, economists and other experts and engaging highly skilled investigators to collect evidence to support the claims asserted on behalf of the Class (*see* Miller Decl. at ¶ 8); (ii) drafting the Consolidated Amended Class Action Complaint ("Amended Complaint") dated May 16, 2006, to comply with the rigorous pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA") (*Id.*); (iii) opposing Defendants' Motions to Dismiss the Amended Complaint (*Id.* at ¶ 11); (iv) continuing their investigation of the case and meeting with certain former employees in person to gather additional information while the initial Motions to Dismiss were pending before the Court (*Id.* at ¶ 12); (v) presenting oral argument to the Court regarding Defendants' Motions to Dismiss the Amended Complaint (*Id.* at ¶ 11); (vi) revising the Amended Complaint in response to the Court's Order dismissing the Amended Complaint with leave to amend to include the additional and substantial evidence that

had been adduced as part of the continuing investigation of the claims at issue in this litigation (*Id*. at ¶ 14); (vii) working with expert witnesses to address certain issues pertaining to loss causation, as well as accounting principles, and drafting and filing the Second Amended Consolidated Class Action Complaint ("Second Amended Complaint") dated February 22, 2007 (*Id*.); (viii) achieving partial success in opposing Defendants' second set of Motions to Dismiss with respect to the Second Amended Complaint (*Id*. at ¶¶ 14-16); (ix) engaging in extensive discovery, including the review of tens of thousands of pages of documents provided by Defendants, and defending certain key depositions (*Id*. at ¶¶ 17-18); (x) consulting with accounting and regulatory experts regarding issues present in this case (*Id*. at ¶ 18); (xi) interviewing additional former employees of FARO to fully understand certain documents produced by Defendants (*Id*.); (xii) negotiating protocols regarding the production of electronic documents by Defendants (*Id*.); (xiii) engaging in discovery motions practice and conferences with the Court regarding a number of discovery issues (*Id*.); (xiv) preparing and filing a Motion to Certify the Class and working with a well-respected expert to address any loss causation issues implicated by Lead Plaintiff's Class Certification Motion (*Id*. at ¶ 19); (xv) successfully opposing, in part, a Motion to Compel filed by Defendants (*Id*. at ¶ 18); (xvi) reviewing Defendants' Memorandum in Opposition to Class Certification, including Defendants' expert reports and drafting a Reply Brief in Support of Class Certification (*Id*. at ¶ 19); (xvii) engaging in two days of mediation sessions in Florida and protracted and difficult settlement negotiations with the assistance of one of the most highly respected mediators in this field (*Id*. at ¶¶ 21-25); (xviii) drafting the parties' Stipulation of Settlement and preparing all accompanying papers and notices submitted to the Court in connection with the Court's preliminary approval of the

settlement of this case and entry of the Notice Order (*Id.* at ¶¶ 26-27); and (ixx) working with the Settlement Administrator in connection with the provision of notice to the Class and responding to Class members' questions and other inquiries. (*Id.* at ¶ 17.)

Based on the information developed to date, Lead Plaintiff is confident that it has developed and obtained sufficient information to recommend the Settlement to the Court as fair, adequate and reasonable. The Settlement avoids the possibility of no recovery for the Class if Lead Plaintiff was ultimately unsuccessful at trial, and provides the Class with a significant and immediate recovery. The fairness of the Settlement is further evidenced by the fact that the Notice describing the terms of the Settlement and related matters was mailed to over 55,000 potential Class members. No Class member has objected to the Settlement in any respect and no Class member has requested exclusion from the Settlement. The procedural history and factual details of this action are set forth more fully in the accompanying Miller Decl. in support of this Motion and Memorandum, which provides a more detailed summary and overview of this litigation. Miller Decl. at ¶¶ 5-27. For all of the reasons explained below, Lead Plaintiff respectfully requests that the Court enter the Final Approval Order.

## III.    **THE SETTLEMENT SHOULD BE APPROVED**

It is established that a class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the Class in such manner as the Court directs. Fed. R. Civ. P. 23(e). As noted above, over 55,000 Class members in this action have been sent the Court-approved notice of the terms of the Settlement in accordance with the Notice Order and publication notice has been provided to Class members as well. Mulholland Decl. at ¶¶ 3-7. Final approval should be

-4-

granted where, as here, the Settlement is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)(citation omitted); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). The fairness of the Settlement is committed to the sound discretion of the Court. *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998); *Bennett*, 737 F.2d at 986. Lead Plaintiff respectfully submits that this Settlement clearly satisfies all of the criteria for judicial aprproval.

A.    **The Settlement Is Entitled To A Presumption Of Fairness**

A proposed settlement is presumptively fair and reasonable when it is the result of arm's-length negotiations. *See* 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.41, at 90 (4th ed. 2002); *see also Manual for Complex Litigation* §30.42, at 240 (3d ed. 1995) ("a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel"). Such negotiations between counsel with "experience and ability . . . necessary to effective representation of the class's interests," ensure fair resolution. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). Absent collusion, a court should give significant weight to the judgment of counsel. *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (citations omitted); *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation."), *aff'd*, 893 F.2d 347 (11th Cir. 1989). As the Court in *Bennett* recognized, it is paramount that, in adjudging a settlement, the Court determine that there "was no fraud or

collusion in arriving at the settlement...." *Id.*, 737 F.2d at 986.

This Settlement is the product of just under three (3) years of litigation, a two-day

mediation session with a highly respected mediator, and arm's-length negotiations among

counsel for the parties at all times. Lead Plaintiff and Lead Counsel conducted an extensive

investigation of the events and transactions relating to the claims alleged and engaged in

appropriate and extensive discovery. Lead Counsel analyzed the information obtained and

researched the applicable law with respect to the claims and the potential defenses and reported

its findings to Lead Plaintiff. Lead Plaintiff and Lead Counsel have concluded that the

Settlement is fair, reasonable and adequate to the Class, and agreed to settle the claims only after

considering: (i) the substantial benefits that the Class will receive from the Settlement; (ii) the

attendant risks of further litigation; and (iii) the desirability of consummating the Settlement as

provided in the Stipulation. Thus, there is nothing in the course of the negotiations or the

substance of the Settlement that "disclose[s] grounds to doubt its fairness." *Manual for Complex*

*Litigation* §30.41, at 237 (3d ed. 1995). To the contrary, the arm's-length negotiations between

experienced counsel with an experienced and respected mediator demonstrate the absence of

collusion and the Settlement's inherent fairness.

**B.      Application Of The Eleventh Circuit Fairness Factors Warrants Approval
          Of The Settlement**

The Eleventh Circuit has recognized that, in determining whether a settlement should be

approved, courts should be guided by the "strong judicial policy favoring settlement as well as by

the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. The

*Bennett* Court suggested that, in determining whether a class action settlement is fair, reasonable

and adequate, the district court should consider: (i) the stage of the proceedings at which the

settlement was achieved; (ii) the likelihood of success at trial; (iii) the range of possible recovery;

(iv) the point on or below the range of possible recovery at which a settlement is fair, adequate

and reasonable; (v) the complexity, expense and duration of the litigation; and (vi) the substance

and amount of opposition to the settlement. *See Bennett*, 737 F.2d at 986.  Courts have

emphasized, however, that these factors should not be applied in a "formalistic" fashion. *See,*

*e.g.*, *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992).  In this case,

consideration of these factors demonstrates that the Settlement should be approved.

> 1.    The Stage of the Proceedings at Which Settlement Was Achieved
>       Supports Approval of the Settlement

"[T]he stage of [the] proceedings" is considered in determining the fairness,

reasonableness and adequacy of a proposed class action settlement. *Bennett*, 737 F.2d at 986; *In*

*re Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1984).  This consideration ensures

that a plaintiff has had an opportunity to evaluate its case and assess the adequacy of any

settlement proposal in light of the strengths and weaknesses of their position. *See Chatelain*, 805

F. Supp. at 213-14.

Lead Plaintiff negotiated a substantial settlement after extensively investigating the

claims, identifying the legal strengths and weaknesses of its claims, conducting discovery, and

participating in mediation before a highly respected mediator.  This investigation, discovery, and

the mediation "give and take," gave Lead Plaintiff and its counsel a clear picture of the strengths

and weaknesses of the case and of the legal and factual defenses that Defendants would likely

raise at trial.  As such, Lead Plaintiff and Lead Counsel had more than sufficient information to

act intelligently in negotiating the terms of the settlement. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021-22 (N.D. Ill. 2000), *aff'd,* 267 F.3d 743 (7th Cir. 2001). The Court should give great weight to this consideration. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir. 1997). As explained below, in light of the significant time that Lead Plaintiff and Lead Counsel devoted to the litigation, they were in a position to make the informed judgment that the risk and expense of continuing to litigate this case was not justified when balanced against the valuable benefits of the Settlement.

> 2. The Likelihood of Success at Trial

Courts acknowledge that pursuing litigation to completion is inherently risky and costly. *See Woodward v. NOR-AM Chem. Co.*, No. 94-0780-CB, 1996 WL 1063670, at *16 (S.D. Ala. May 23, 1996). Courts attempting to balance this factor have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973). This factor requires the Court to balance the likelihood of ultimate success on the merits against the relief offered by the proposed Settlement. *Whitford*, 147 F.R.D. at 140.

Lead Plaintiff's theory on loss causation was that several stock price drops during the Class Period were attributable, at least in part, to Defendants' misrepresentations or omissions. In addition to challenging Lead Plaintiff's proofs of fraud and scienter, as well as materiality and damages, Defendants challenged the existence of loss causation and relied on analyst reports attributing the loss in stock value concerning the November 3, 2005 and January 19, 2006 disclosures to other factors and challenged the existence of loss causation in the instance of the March 15, 2006 disclosure on the basis that no disclosure resulted in a decline of stock value, arguing, instead, that market uncertainty alone resulted in any losses incurred. *See* Miller Decl.

at ¶ 32.

Defendants argued vigorously in their Motions to Dismiss and during settlement negotiations that both the initial complaints, the Amended Complaint and the Second Amended Complaint failed to allege the essential element of loss causation. *Id.* at ¶ 33. Defendants were steadfast in taking the position that economic evidence would establish that Lead Plaintiff would be unable to prove any damages resulting from the alleged false and misleading statements because any stock price declines were caused by outside market forces. *Id.* While Lead Plaintiff and its counsel believe that their theory of loss causation satisfied the standard set out by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), Lead Plaintiff's ability to prove the essential element of loss causation at trial in order to establish damages was uncertain. *Id.* at ¶ 34.

The amount of provable damages in this litigation also was very much in question. Damages in cases such as these are always difficult to estimate; provable damages were unlikely to exceed Lead Plaintiff's expert's high estimate of approximately $70 million (assuming a virtual "home run" on all of the post motion to dismiss issues remaining in the case), and could have amounted to zero, which was Defendants' asserted view. *Id.* at ¶ 36. In fact, the likely recoverable damages in the event that Lead Plaintiff prevailed on all claims would potentially result in an award of significantly less than the amount that Lead Plaintiff would have sought at any trial (assuming some recovery), based upon questions regarding the proportion of damages attributable to the claims asserted, as opposed to other factors, which Defendants indicated they would raise as the centerpiece of their defense on damages (even assuming that liability could be established -- which Defendants vigorously contested based on the facts discovered and

-9-

applicable law). *Id.* Furthermore, as noted above, Defendants argued that no damages could be proven at all. At trial, the damage assessments of Lead Plaintiff's and Defendants' experts were certain to vary substantially, and in the end, this crucial element at any trial would have been reduced to a "battle of the experts." *Id.* at ¶¶ 36-37.

As is evident from the Motions to Dismiss filed in this case, falsity and materiality were hotly contested issues in this litigation, which may have proven difficult to establish at trial. *Id.* at ¶ 35. Defendants took the position that FARO's Class Period statements were, in fact, truthful or, at a minimum, to the extent that they were allegedly incorrect or false, that such alleged falsity was entirely immaterial to investors and the market. *Id.* Falsity and materiality were both essential elements of Lead Plaintiff's claims. *Id.* Proving the falsity and materiality of any of Defendants' actionable Class Period statements would have been a significant hurdle on a motion for summary judgment and at any trial. *Id.*

Although Lead Plaintiff believes that it would be able to produce admissible and convincing expert testimony on every essential element of its claims, many obstacles to success lay before them when the parties attended mediation and the Settlement was reached. *Id.* at ¶ 37. The litigation could have foundered based on Lead Plaintiff's failure to establish loss causation, falsity, or other essential elements, such as scienter or materiality. *Id.* Even if each of these elements was established, proving damages in excess of the settlement amount of $6.875 million was very much in doubt. The uncertainty as to Lead Plaintiff's ability to prove liability and damages above the settlement amount strongly supports the Settlement in this case. *Id.*

Collectively, these factors could potentially lead to dismissal of all or part of Lead Plaintiff's claims on a motion for summary judgment, or even lead to a defense verdict at trial.

*Id.* at ¶ 38.   Lead Plaintiff and Lead Counsel took all of these factors into account in determining

that the Settlement was fair, reasonable and adequate under all of the circumstances.  *Id* at ¶ 38.

Accordingly, although it believes that there certainly was a prospect that it would succeed at trial,

in light of the potential defenses available to Defendants, Lead Plaintiff responsibly opted for an

immediate, significant and tangible benefit for the Class, which it determined was reasonable

under the circumstances.  *Id.*

3.    <u>The Settlement Is Within the Range of Possible Recovery</u>

The benefits of the Settlement justify approval.  In light of the inherent uncertainties of

securities litigation, in general and the specific uncertainties present here, a settlement in the

amount of $6.875 million, without the additional expense and fees associated with a trial by jury,

is of great and immediate benefit to the Class.  The determination of a reasonable settlement is

not susceptible to mathematical precision.  Indeed, "in any case there is a range of reasonableness

with respect to a settlement."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v.

C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).  "The fact that a proposed

settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

that the proposed settlement is grossly inadequate and should be disapproved."  *Detroit v.

Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974).  "In fact there is no reason, at least in theory,

why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

single percent of the potential recovery."  *Id.* at 455 n.2; *see also In re Gulf Oil/Cities Serv.

Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (approving settlement that would

provide "a bit more than 48 cents per share" out of the potential recovery of approximately $30

per share).  In *Grinnell*, the court found a proposed settlement of 3.2 to 3.7 percent of the

-11-

potential recovery "'well within the ball park.'" *Detroit v. Grinnell Corp.*, 356 F. Supp. 1380,

1386 (S.D.N.Y. 1972) (citation omitted), *aff'd in part and rev'd in part on other grounds*, 495

F.2d 448 (2d Cir. 1974); *accord Weinberger*, 698 F.2d at 65 (upholding settlement that, because

of legal difficulties, amounted to "only a negligible percentage of the losses suffered by the

class"); *see also In re TECO Energy Sec. Litig.*, Case No. 8:04-CA-1948-T-27EAJ (M.D. Fla.

October 18, 2007)(approving securities class action settlement in which recovery was less than

5% of estimated maximum recovery).

      It bears noting that few cases tried before a jury result in an award of damages in the full

amount requested. Above all, the Settlement provides for payment of $6.875 million in cash now

-- not the promise of possible payment years later. *See In re "Agent Orange" Prod. Liab. Litig.*,

611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *aff'd in part and rev'd in part on other grounds*, 818

F.2d 179 (2d Cir. 1987). Given the obstacles and uncertainties attendant to this complex

litigation, the Settlement is well within the range of reasonableness, and is unquestionably better

than the possibility of no recovery at all. In sum, Lead Plaintiff agreed to this Settlement in light

of all of the risks of litigation, as well as the likely recovery if the case was litigated fully on the

merits. Miller Decl. at ¶ 38.

          4.    The Complexity, Expense and Duration of the Litigation

      "It is common knowledge that class action suits have a well deserved reputation as being

most complex." *Cotton*, 559 F.2d at 1331. Securities class actions are notoriously difficult to

prove and are vigorously defended. *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159

(S.D.N.Y. 1971) ("[s]tockholder litigation is notably difficult and unpredictable"); *In re

SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990)("Stockholder

litigation is notably difficult and notoriously uncertain' even in the best of circumstances.")

The foregoing principles are certainly applicable here. Continued litigation against Defendants would have been of substantial duration and cost. If this Litigation were to continue, significant additional time and resources would be necessary to complete fact and expert discovery and pre-trial proceedings. Given the complex damage issues, discovery of experts would be considerable, and the additional cost for accounting and damages experts alone could easily reach hundreds of thousands of dollars. As such, completion of the pretrial work would have been costly and time-consuming. *See Warren*, 693 F. Supp. at 1059 (Observing that "[t]he parties estimate that a trial of this case would take three weeks of Court time, and would costs [sic] hundreds of thousands of dollars in attorneys' fees, expert witness fees, and costs. These factors militate in favor of a decision to accept the proposed settlement.").

Additionally, trial preparation would have been a significant endeavor in this case. Due to the potential number of documents and witnesses, Lead Plaintiff and Lead Counsel would have had to expend significant hours preparing for direct and cross-examination, identify and/or prepare the many exhibits for trial and engage in expected significant pre-trial motion practice, including motion for summary judgment and motions in *limine*. *Id*. The trial itself would probably require at least several weeks, if not longer, "with its attendant pretrial order, laborious winnowing of proof before trial, and post-trial skirmishing." *Gulf Oil/Cities Serv.*, 142 F.R.D. at 491. Moreover, any trial judgment would still be subject to the uncertainty of likely appeals. Even large monetary judgments, after lengthy litigation and trial, can be completely lost on appeal or as a result of a judgment notwithstanding the verdict. *Id*.

In sum, the merits of the Settlement should be balanced against the expense of achieving

-13-

a more favorable result at trial. *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971). As courts have noted, "[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995). Thus, Lead Plaintiff believes that continued litigation of this action would be complex, time-consuming and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured. The Settlement secures for the Class a substantial benefit undiminished by further litigation expenses, and without the delay, risk and uncertainty of continued litigation.

        5.    <u>Extent and Substance of Opposition to the Settlement</u>

      "It is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)(internal citations omitted). The absence of objections may evidence the fairness of a proposed settlement. *PaineWebber*, 171 F.R.D. at 126; *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though 'a settlement is not unfair or unreasonable simply because a large number of class members oppose it.'") (footnotes omitted). Here, the deadline for submission of objections to, or requests for exclusion from, the Settlement was September 12, 2008. In response to the mailing of the Notice to over 55,000 Class members, and publication of a summary notice in *Investor's Business Daily*, no Class member has objected to or requested exclusion from this Settlement. Thus, the reaction of the Class to the Settlement overwhelmingly supports approval by the Court.

-14-

C.    **Notice to Class Members and Opportunity to Present Their Views**

Due process requires that, in a class action, notice of the settlement and an opportunity to

be heard must be given to absent class members. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F.

Supp. 660, 667 (M.D. Ala. 1988). Rule 23(e) requires that the notice fairly apprise class

members of the terms of the proposed settlement. Here, the Notice, the form of which the Court

approved in the Notice Order, was sent to over 55,000 Class members informing them of the

terms of the Settlement and related matters. In addition to other pertinent Settlement

information, the Notice included information regarding: (i) the amount of the Settlement

proposed to be distributed to the Class; (ii) an explanation of the issues on which the parties

disagreed; (iii) an explanation of attorneys' fees and expenses sought; (iv) the name, telephone

number, and address of Lead Counsel who are available to answer questions from Class members

concerning matters contained in the Notice; and (v) an explanation of the reasons why the parties

propose the Settlement. 15 U.S.C. § 77z-1(a)(7). As such, the Notice fairly informed the

potential Class members of the Settlement and their individual rights thereto.

IV.    **THE PLAN OF ALLOCATION SHOULD BE APPROVED**

Approval of a plan for the allocation of settlement proceeds in a class action is "governed

by the same standards of review applicable to approval of the settlement as a whole: the plan

must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL

502054 *1-2 (N.D. Cal. June 18, 1994). An allocation formula need only have a rational basis,

particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822

F. Supp. 1389, 1420-24 (D. Minn. 1993); *see also Oracle* *2 ("A plan of allocation that

reimburses class members based on the extent of their injuries is generally reasonable.").

-15-

## A.    Structure of the Plan of Allocation

The Plan of Allocation, fully described in the Notice, was formulated by Lead Counsel's damage expert and tracks Lead Plaintiff's theory of damages, ensuring its fairness. Miller Decl. at ¶¶ 41-43. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the Settlement Fund less fees and expenses) with that share to be determined by the ratio that the Authorized Claimant's claim bears to the total claims of all Authorized Claimants. *Id.* Class members who do not submit acceptable Proofs of Claim will not share in the Settlement proceeds.

## B.    The Plan Is Fair, Reasonable and Adequate and Should Be Approved

Although some Class members will benefit differently under the Plan of Allocation, "there is no rule that settlements benefit all class members equally." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981). It is appropriate for allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 349 (N.D. Tex. 1976). Lead Plaintiff acted fairly in developing the Plan of Allocation, working in consultation with its damages expert, taking into account the relative strength of the claims and the Court's rulings on the motions to dismiss. Miller Decl. at ¶¶ 41-43. Accordingly, Lead Plaintiff respectfully submits that the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

V.    **COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED**

    A.    <u>The Requested Counsel Fees Are Appropriate and Should Be Awarded</u>

The award of counsel fees in this class action is governed by the common-fund doctrine. The Supreme Court has recognized that when a common fund is established for the benefit of a class, the cost of litigation and reward for counsel's efforts should be spread among the common fund's beneficiaries. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit also has recognized that attorneys who create a common fund are entitled to be compensated for their efforts from a percentage of that fund. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). In *Camden*, the court held:

> Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.
>
>                       \* \* \*
>
> The majority of common fund fee awards fall between 20% to 30% of the fund . . . [and] an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded.

*Id.* at 774-75. Although the *Camden* court identified 25% as a "benchmark" percentage fee award, it specified that this percentage "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. In complex securities actions such as this, courts within this District and Circuit, as well as nationwide, have frequently adjusted upward from the 25% "benchmark" and awarded fees of 30% or more. *See* Miller Decl at ¶¶ 45-46; *see also Stahl v. MasTec, Inc.,* No. 8:05-CV-1265, 2008 WL 2267469 (M.D.Fla. May 20, 2008)(awarding 27.9% of the settlement in a common fund case); *Diaz v. Hillsborough County Hosp. Authority*, 8:90-

-17-

CV-120, 2000 WL 1682918 at * 7 (M.D.Fla. Aug. 7, 2000) (awarding 30% of common fund approved in statutory fee shifting case); *Francisco v. Numismatic Guaranty Corp. of America,* No. 06-61677-CIV, 2008 WL 649124 * 13 (S.D.Fla. Jan. 31, 2008)(awarding almost 30% of value of settlement and noting that "fee request is reasonable given Class Counsel's contingent fee risk, their financial contribution to the case, fees paid in similar cases, the difficult questions at issue here, the work in obtaining this result for the Class, and the time and labor of counsel").[1] In fact, District Courts in this Circuit have recently awarded percentages as high as 33.3% of the gross settlement fund in similar cases.  Miller Decl. at ¶ 47.

Here, Lead Counsel seek an attorneys' fee award of 30% of the Settlement Fund.[2] Although the award sought here is more than the suggested "benchmark," it is in line with or less than what other courts have routinely awarded in the past.  Additionally, the 30% fee sought by Lead Counsel is reasonable under the circumstances of this case, meets the factors identified by the Eleventh Circuit used to determine the appropriateness of a fee award and is within the range of percentages awarded in similar cases in this Circuit and across the county.  Of major importance, is that the fee request is supported by the Court-appointed Lead Plaintiff.  Miller

---

[1]The percentage of the fund requested here is also comparable to fees that have been awarded in class actions in other jurisdiction. *E.g., In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 300 (1st Cir. 1995)(30.9% fee); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8% fee); *Gulf Oil/Cities Serv.*, 142 F.R.D. 588 (30% fee).

[2]It bears noting that the Memorandum of Understanding negotiated by the parties permitted Lead Counsel to seek 33% of the common fund as attorneys' fees.  (Miller Decl. at ¶ 49.)  After reviewing their lodestar and consulting with Lead Plaintiff, however, it was determined that it would be more appropriate to seek 30% of the fund created as fair and reasonable compensation.  (*Id.*)  As reflected in the Miller Decl., an award of 30% of the common fund only provides Lead Counsel with a small multiplier on the time that they have devoted to the prosecution of this case.  (*Id.* at ¶ 55.)

-18-

Decl at ¶¶ 49, 67 . Lead Plaintiff was actively involved in all aspects of this litigation, including the settlement discussions. (*Id*. at ¶ 61.) Because of this involvement, Lead Plaintiff is in a unique position to evaluate the work of counsel and the effort required to obtain this multi-million dollar result and to determine, as it has, that the fee request is fair and reasonable and should be awarded. *Id*. As the Third Circuit held in *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001), a fee approved by a lead plaintiff is presumptively reasonable: "[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel." Thus, under the PSLRA, the aim of the fee award analysis "'is not to assess whether the fee request is reasonable,'" but "'to determine whether the presumption of reasonableness has been rebutted.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 n.10 (3d Cir. 2005)(citation omitted).

**B.    The Relevant Factors Considered by the Eleventh Circuit Dictate that the Requested Fee Is Reasonable**

In *Camden*, the court enumerated the following factors that the Court may consider in determining the percentage of a fund to be applied to a case: (i) the time and labor required; (ii) the novelty and difficulty of the question involved; (iii) the skill requisite to perform the legal services properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. 946 F.2d at 773 n.3. The Court in *Camden* also stated: "Other pertinent factors are

-19-

... whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel..., and the economics involved in prosecuting a class action." 946 F.2d at 775. While each of the above factors may be an appropriate consideration, "[t]he factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.*

          1.     <u>The Time and Labor Required</u>

The prosecution of this action has been highly focused and time-intensive. Miller Decl. at ¶ 51. Lead Counsel have expended over 4,200 hours in this litigation. *Id.* at ¶ 54. As discussed in more detail in the Miller Decl., during the past three years, Lead Counsel have worked with dedication and devotion to this case. The extensive efforts of Lead Counsel resulted in a positive recovery for the Class -- as evidenced by the Class members' reaction to it. As a result, the time and labor involved and the result achieved fully justify the requested fee.

          2.     <u>The Contingent Nature of the Representation and the Preclusion of Other Employment</u>

Lead Counsel prosecuted this case on a wholly contingent basis and have received no compensation for their services since this action was initiated in 2005. Miller Decl. at ¶ 58. As a result, Lead Counsel assumed a substantial risk that the litigation would yield no recovery after a significant outlay of time and expense. Courts have long recognized that the attorneys' contingent-fee risk is an important factor in determining the fee award. *See, e.g., Jones v. Cent. Soya Co.*, 748 F.2d 586, 591 (11th Cir. 1984). In *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D.Fla. 1988), the Court observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. Most often,

-20-

> this method of representation is the only means a defrauded securities investor can seek assistance from an attorney. Through this type of relationship, the fundamental policies supporting the federal securities laws are promoted.
>
> \*        \*        \*
>
> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.

118 F.R.D. at 548. Lead Counsel know from personal experience that, despite their most vigorous and competent efforts, success in contingent litigation such as this is never guaranteed. Miller Decl. at ¶ 62. In similar cases, counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars of time and received no compensation at all. *Id.* Even a victory at the trial stage is not a guarantee of success.[3]

The burden of potential financial loss that Lead Counsel accepted is compounded by their effective preclusion of other employment by this case. *Id.* at ¶ 63. This action has required a significant time and financial commitment by counsel. *Id.* The time and expenditures were fully warranted. *Id.* Indeed, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after a considerable and difficult effort. *Id.* at ¶ 64. In sum, the contingent nature of Lead Counsel's representation strongly favors the requested percentage.

---

[3]A good example is *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997), in which the Eleventh Circuit reversed an $18.3 million jury verdict won by class plaintiffs in a securities class action after almost seven years of litigation and rendered judgment for the defendant. The Court of Appeals ruled for the first time in this Circuit that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations, although other circuits had held that such proof may establish loss causation. *Id.* at 1448-449.

3.    The Novelty and Difficulty of the Questions Involved and the Skill
        Required to Perform the Legal Services Properly

In assessing the quality of work performed and the risk undertaken by Lead Counsel, the

complexity and magnitude of the litigation must be considered, as well as the difficulty of the

questions involved. Here, Lead Plaintiff "faced all the multi-faceted and complex legal questions

endemic to §10(b) litigation, including proving scienter, materiality, causation, and damages."

*Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (emphasis omitted). The record here

also demonstrates that this litigation is highly complex, involving thorny, and often unresolved,

legal issues and the difficult assembly of proof. As discussed in the Miller Decl., Defendants

raised difficult questions about materiality, scienter, loss causation and the adequacy of

Defendants' disclosures. Miller Decl., ¶¶ 30-38. Thus, without this Settlement, Lead Plaintiff

faced a substantial risk that the Court could grant summary judgment or that Lead Plaintiff could

lose at trial. Accordingly, the novel and difficult issues presented by this litigation fully justify

the fee award requested here.[4]

4.    The Customary Fee and Awards in Similar Cases

Another factor to be considered in arriving at a percentage fee award is the amount of

awards in similar cases. "Awards of 30% or more of a settlement fund are not uncommon in

§10(b) common fund cases such as this." *Ressler*, 149 F.R.D. at 655. As discussed above, the

requested fee of 30% of the Settlement Fund is within the range of, and consistent with, the

---

[4]Counsel's fees should also reflect the degree of experience, competence and effort
necessary to achieve the proposed Settlement. Courts have recognized the importance of
providing incentives to experienced counsel who take complex cases on a contingent fee basis,
so that those cases can be prosecuted effectively. Lead Counsel here are experienced complex
litigation attorneys with national reputations for the effective prosecution of such cases. Miller
Decl. at ¶ 65.

percentage of the common fund awarded in the Eleventh Circuit under *Camden*.

        5.    The Amount Involved and the Results Achieved

        The amount involved and the results achieved is a factor that measures counsel's efforts

in obtaining the recovery on behalf of the class. *See Allapattah Servs. v. Exxon Corp.*, 454 F.

Supp. 2d 1185, 1204-05 (S.D. Fla. 2006). Here, Lead Counsel obtained a $6.875 million

Settlement on behalf of the Class. This result was obtained after Lead Counsel had extensively

litigated the merits of this action. Lead Counsel believe that the Settlement is a very good result

for the Class in light of the very substantial risks and obstacles to recovery presented in this case,

and the difficulty of establishing liability and damages at trial if Lead Plaintiff would have

ultimately prevailed at the summary judgment stage.

        6.    The Experience, Reputation and Ability of Counsel

        Lead Counsel have had the opportunity to demonstrate to this Court their experience,

reputation and ability to prosecute this case. Having reviewed their experience, this Court

appointed them to serve the Class as Lead Counsel.[5]

        7.    Undesirability of the Case

        Securities class actions are inherently risky. They require a thorough and lengthy, not to

mention expensive, investigation of the claims of plaintiffs and the putative classes without any

benefit of full discovery. The financial burden on counsel and the time demands of litigating a

class action of this size and complexity easily render the case "undesirable." *In re Shell Oil*

---

        [5]Additionally, the tenacious efforts to obtain this Settlement confirm that Lead Counsel
managed the litigation with skill and in the interests of the Class. *See Di Giacomo v. Plains All
Am. Pipeline*, No. H-99-4137, 2001 WL 34633373 *12 (S.D. Tex. Dec. 18, 2001)(awarding
attorneys' fees of 30% amounting to 5.3 multiplier).

*Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993). Moreover, the PSLRA imposes a heightened pleading standard that many plaintiffs fail to meet. *See, e.g., Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350 *32 (N.D. Tex. Nov. 8, 2005) (observing that the Fifth Circuit has upheld 90% of dismissals of complaints). Therefore, this action was clearly inherently risky and, from that perspective, undesirable.

### 8.    Nature and Length of Relationship with the Client

Throughout the prosecution of the action, Lead Counsel were in frequent contact with the Court-appointed Lead Plaintiff. Miller Decl. at ¶ 67. Lead Plaintiff had a pre-existing attorney-client relationship with Lead Counsel and was apprised of and consulted with regarding every major development in the case and, after careful consideration, approved and supported the Settlement of the litigation on the terms proposed. *Id.* Lead Counsel have dedicated their efforts to protecting the best interests of Lead Plaintiff and the Class throughout this litigation. *See Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 WL 21277124 * 11 (N.D. Okla. May 28, 2003)(holding that substantial involvement in the litigation satisfied this factor).

### 9.    The Reaction of the Class Supports the Requested Fee Award

There have been no objections to or requests for exclusion from this Settlement. Class members were informed in the Notice that Lead Counsel would apply for a fee of 30% of the Settlement Fund, plus expenses not to exceed $200,000, and were advised of their right to object to Lead Counsel's fee and expense request. Given the size of the Class, the fact that there are no objections to Lead Counsel's request is indeed a "'rare phenomenon'" and strong evidence that the requested fee is reasonable. *See Rite Aid*, 396 F.3d at 305 (citation omitted).

**C.**     <u>Award of Expenses</u>

Lead Plaintiff also seeks $182,781.80, plus interest, which represents the expense

incurred by counsel in prosecuting this action. These expenses are detailed in the Miller Decl.

submitted herewith. "'There is no doubt that an attorney who has created a common fund for the

benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that

fund.'" *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) (citation and

emphasis omitted). The expenses incurred were reasonable and necessary to successfully

prosecute this litigation. Thus, Lead Plaintiff respectfully requests that these costs be awarded.

**VI.**     <u>CONCLUSION</u>

For all these reasons, Lead Plaintiff respectfully requests that the Court approve the

Settlement, the Plan of Allocation, and the application for attorneys' fees and expenses.

**VII.**     <u>CERTIFICATION OF COUNSEL</u>

Pursuant to Local Civil Rule 3.01(g), Lead Plaintiff hereby certifies that it has conferred

with Defendants' counsel and Defendants' counsel agree that they do not oppose the relief

requested in this Motion. For that reason, this Motion has been captioned as unopposed.

Respectfully submitted,

Dated: September 26, 2008     By:     /s/ Scott R. Shepherd
    Trial Counsel
    Scott R. Shepherd
    Fla. Bar No. 069655
    Shepherd, Finkelman, Miller & Shah, LLP
    1640 Town Center Circle
    Weston, FL 33326
    (Telephone) (954) 943-9191
    (Facsimile) (954) 943-9173
    (Electronic mail) sshepherd@sfmslaw.com

-25-

John M. Edgar (admitted *pro hac vice*)
John F. Edgar (admitted *pro hac vice*)
Edgar Law Firm LLC
4520 Main Street, Suite 1650
Kansas City, Missouri  64111
Telephone: (816) 531-0033
Facsimile: (816) 531-3322

James E. Miller (admitted *pro hac vice*)
Patrick A. Klingman (admitted *pro hac vice*)
Karen M. Leser (admitted *pro hac vice*)
Shepherd, Finkelman, Miller & Shah, LLP
65 Main Street
Chester, Connecticut  06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120

James C. Shah (admitted *pro hac vice*)
Nathan Zipperian (admitted *pro hac vice*)
Shepherd, Finkelman, Miller & Shah, LLP
35 East State Street
Media, Pennsylvania 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883

Attorneys for Lead Plaintiff,
Kornitzer Capital Management, Inc.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

IN RE FARO TECHNOLOGIES, INC.     )   Civil Action No. 6:05-cv-1810-ACC-DAB
SECURITIES LITIGATION                  )

### DECLARATION OF JAMES E. MILLER

I, James E. Miller, declare as follows:

1.      I am a member of Shepherd, Finkelman, Miller & Shah, LLP (the "Firm" or "Co-Lead Counsel"). I am one of the attorneys at the Firm that has been principally responsible for prosecuting this action on behalf of Lead Plaintiff, Kornitzer Capital Management, Inc. ("KCM" or "Lead Plaintiff") and the proposed class ("Class"), which has been preliminarily certified for settlement purposes pursuant to this Court's Preliminary Approval Order dated June 2, 2008 ("Preliminary Approval Order" or "Notice Order"). I am familiar with virtually every aspect of this case. I make this Declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement, Approval of Plan of Allocation and Award of Attorneys' Fees and Expenses and accompanying Memorandum of Law. Unless otherwise indicated, the facts set forth herein are based upon my personal knowledge and, if called to testify, I could and would testify competently as to all of the subjects contained in this Declaration.

2.      I am an attorney licensed to practice law in the States of Connecticut and New Jersey, as well as the Commonwealth of Pennsylvania. I also have been admitted to practice before the following Courts: the United States District Courts for District of Connecticut, the District of New Jersey, the District of Nebraska, the Eastern and Middle Districts of Pennsylvania, and the Eastern District of Wisconsin; the United States Court of Appeals for the Second, Third, Seventh and Ninth Circuits; and the United States Supreme Court. I was admitted *pro hac vice* to practice before this Court in this case on behalf of Lead Plaintiff.

3.      I am a graduate of Cornell University (B.S. 1988) and the University of Pennsylvania School of Law (J.D. 1991). After graduating from law school, I served as a Law Clerk for The Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania from 1991 until 1992 and then practiced law at Pelino & Lentz, P.C. in

Philadelphia, Pennsylvania from 1992 until 2000. During my years at Pelino & Lentz, P.C., I was named a Partner and primarily defended corporate and institutional clients in complex commercial and employment litigation while also representing plaintiffs in certain select cases. In 2002, after relocating to Connecticut, I formed the Firm with my current partners and began devoting my practice to representing plaintiffs in select class action cases while continuing to represent a number of my corporate clients in complex litigation and labor/employment matters.

   4.  The procedural history and factual details of this action are summarized in paragraphs 5 through 26 below.

  **A.**  **Initial Complaints And Appointment of Lead Plaintiff And Lead Counsel**

   5.  Beginning on December 6, 2005, the following actions were filed in the United States District Court for the Middle District of Florida as securities class actions on behalf of persons who purchased the publicly traded securities of FARO:

     *Belfi v. FARO Technologies, Inc. et al.*, 6:2006cv00008;

     *Burrus v. FARO Technologies, Inc., et al.*, 6:2006cv00016;

     *Goldberger v. FARO Technologies, Inc., et al.*, 6:2005cv01810; and

     *Johnson v. FARO Technologies, Inc., et al.*, 6:2006cv00057.

   6.  By Order dated April 19, 2006, the Court consolidated these cases and captioned the consolidated action as *In re: FARO Technologies Securities Litigation* (the "Litigation").

   7.  On April 19, 2006, the Court appointed KCM as Lead Plaintiff pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") and, by Order dated April 26, 2006, the Court approved Lead Plaintiff's selection of Shepherd, Finkelman, Miller & Shah, LLP and The Edgar Law Firm, LLC as "Lead Counsel," pursuant to §21D(a)(3)(B)(v) of the Exchange Act. By Order dated April 26, 2006, the Court directed KCM to file a Consolidated Amended Complaint ("Amended Complaint") within twenty (20) days.

  **B.**  **Amended Complaint and Motions to Dismiss**

   8.  On May 16, 2006, Lead Plaintiff filed the Amended Complaint, which was 152

pages in length and substantially expanded the scope of the action and the length of the proposed class period. Specifically, the Amended Complaint now addressed two additional adverse disclosures on January 19, 2006 and on March 15, 2006, respectively, which had occurred after the initial complaints were filed in December, 2005 and early January, 2006 -- which initial complaints only addressed an adverse disclosure on November 3, 2005. The Amended Complaint was the product of an intensive investigation conducted on behalf of Lead Plaintiff beginning in December, 2005 and was the result of detailed interviews conducted by skilled investigators with over fifty (50) former employees of Defendant, FARO Technologies, Inc. ("FARO"), as well as consultation with accountants, economists and other experts. As a result of their work with skilled investigators and experts, Lead Counsel worked hard to and believed that they had drafted an Amended Complaint which complied fully with the rigorous pleading standards of the Private Securities Litigation Reform Act of 1995.

9.    Following the filing of the Amended Complaint, counsel for all parties met in person to prepare a joint Case Management Order and discussed whether it would be possible for the parties to productively discuss settlement. Lead Plaintiff determined, at that time, that neither party had sufficient information regarding the claims at issue and/or the facts that would be addressed in discovery to intelligently discuss settlement and that a mediation was unlikely to be productive at this time.

10.    On July 13, 2006, Defendants filed two Motions to Dismiss the Amended Complaint. The motions were supported by memoranda of law and exhibits consisting of more than 80 pages. The motions focused on Lead Plaintiff's Section 10(b) claim, arguing that the Amended Complaint failed to plead scienter, as well as loss causation, and that the allegations of the Amended Complaint amounted to claims of mismanagement, as opposed to actionable fraud.

11.    Following the filing of Defendants' Motions to Dismiss, Lead Counsel and Lead Plaintiff devoted many hours to the preparation of a response to Defendants' Motions to Dismiss. On August 30, 2006, Lead Plaintiff filed its Opposition to the Motion to Dismiss, asserting that

the Amended Complaint met the pleading requirements of the PSLRA and Federal Rules of Civil Procedure 9(b). On September 15, 2006, Lead Counsel appeared and presented argument in opposition to the Motions to Dismiss, which argument lasted approximately two (2) hours.

12.    During the pendency of Defendants' first sets of Motions to Dismiss, Lead Plaintiff and Lead Counsel worked to continue to develop their case and devoted substantial time and resources to identifying additional witnesses and evidence, as well as in refining their theory of the case. In fact, during the pendency of the Motions to Dismiss the Amended Complaint, representatives of Lead Counsel met in person with certain potential key witnesses in an effort to gather additional facts and evidence to support the claims asserted.

13.    Pursuant to an Order dated February 3, 2007 ("Dismissal Order"), the Court dismissed Lead Plaintiff's Amended Complaint, finding that Lead Plaintiff had failed to plead fraud with the requisition specificity, to plead scienter on the part of Defendants and had failed to adequately plead loss causation.

14.    To address the Court's concerns, Lead Plaintiff filed a 133-page Second Amended Complaint on February 22, 2007, adding substantial additional factual, fraud related, scienter and loss causation allegations that explained how several partial revelations of FARO's true financial condition reached the market and alleged that such disclosures revealed the falsity of Defendants' Class Period alleged misrepresentations and omissions. Lead Plaintiff and Lead Counsel redoubled their efforts, and devoted hundreds of hours in a relatively short period of time to collecting even more information and evidence to support the claims asserted, and met with experts to hone their allegations with respect to certain accounting issues, as well as causation. On May 11, 2007, Defendants filed another set of Motions to Dismiss the Second Amended Complaint, arguing that Lead Plaintiff again failed to adequately plead fraud, scienter and loss causation. Once again, Lead Plaintiff and Lead Counsel devoted many hours to the preparation of an Opposition to the Motions to Dismiss the Second Amended Complaint, which Lead Plaintiff filed on June 8, 2007.

15.     In response to the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2008), which addressed the pleading standard with respect to scienter in securities fraud cases brought pursuant to the Exchange Act and Rule 10b-5, Lead Plaintiff also filed a separate Memorandum of Law on June 29, 2007 in response to the Court's direction that the parties provide briefing with respect to the same.

16.     On September 18, 2007, the Court entered an Order ("Second Dismissal Order") granting in part and denying in part Defendants' Motions to Dismiss. The effect of the Second Dismissal Order was that, in sum, Lead Plaintiff was permitted to proceed against FARO and Individual Defendants, Simon Raab, Gregory Fraser and Barbara Smith. The claims against the auditor Defendant, Grant Thornton, LLP, however, were dismissed with prejudice.

**C.     Discovery**

17.     The Court's September 18, 2007 Order sustaining portions of the Second Amended Complaint ended the PSLRA's discovery stay that had been in effect since the Litigation was filed. In preparation for the lifting of the discovery stay, during the pendency of the various motions to dismiss, Lead Counsel consulted with former FARO employees, as well as with accounting and legal experts and economists, to assist in refining the highly technical issues of the Litigation and the potential scope of discovery. Following the end of the discovery stay, Lead Counsel served Defendants with extensive interrogatories and requests for production of documents.

18.     After serving discovery requests, Lead Counsel negotiated their scope with counsel for Defendants, including protocols regarding the search and production of electronic documents. Defendants produced tens of thousands of pages and documents to Lead Plaintiff. Many of the documents produced by Defendants were highly technical and contained substantial amounts of information regarding FARO's internal accounting procedures. To assist Lead Plaintiff in thoroughly analyzing all of the data contained therein, Lead Counsel consulted with accounting and regulatory experts and economists to analyze the same. In addition, Lead

Counsel also thoroughly reviewed the tens of thousands of pages of electronic documents produced by Defendants. Lead Counsel also interviewed certain additional witnesses to understand and place in proper context certain documents produced by Defendants. As part of discovery, it also was necessary for Lead Counsel to participate in numerous discovery conferences and to engage in motions practice regarding certain discovery issues, including successfully resisting, in part, a Motion to Compel filed by Defendants. Finally, Lead Plaintiff produced extensive documents regarding its investments in FARO, defended its expert's deposition and produced two representatives of KCM for deposition to explain, *inter alia*, KCM's investment in FARO and its role as a Lead Plaintiff.

**D.    Lead Plaintiff's Class Certification Motion**

19.    On January 2, 2007, Lead Plaintiff filed its Motion to Certify the Class, along with an extensive expert analysis regarding loss causation. On February 8, 2007, following certain additional discovery, Defendants filed their Opposition to the Class Certification Motion. Lead Plaintiff and Lead Counsel thoroughly analyzed this Opposition and also prepared a draft Reply Brief for submission to the Court, which KCM would have sought leave to file after taking certain agreed-upon discovery if the case had not been resolved.

**E.    Consultants and Lead Plaintiff's Damages Analysis**

20.    During the Litigation, Lead Counsel conferred on many occasions with third-party accountants and economic experts, and retained consultants to analyze potential recoverable damages and the materiality of the alleged false and misleading statements. This information guided Lead Plaintiff's settlement negotiations and assisted Lead Plaintiff in formulating a fair Plan of Allocation, a true and correct copy of which appears as Exhibit "A" to the Notice approved by the Court, a true and correct copy of which is attached collectively as Exhibit "III" to the accompanying Declaration of Paul Mulholland, CPA, CVA.

F.    **Mediation and Settlement Negotiations**

21.    During the course of discovery, the parties agreed to attend mediation. The parties selected Nicholas H. Politan, a former United States District Judge for the District of New Jersey, as their mediator and scheduled mediation for February 11 and 12, 2008 at the offices of Greenberg Traurig, LLP. Judge Politan is one of the most respected mediators in this field and has assisted parties in resolving a number of complex securities class actions pending in the United States. As the date for the mediation approached, the parties conferred and agreed to provide Judge Politan with a uniform set of materials that would assist Judge Politan in understanding the issues of the case and the parties' arguments as to the merits of the Litigation. These materials included a copy of the Second Amended Complaint, briefing on Defendants' Motions to Dismiss the Amended Complaint, and the Court's Second Dismissal Order.

22.    The parties also agreed to submit confidential Mediation Briefs to Judge Politan so that he was fully aware of the parties' respective positions regarding the strengths and weaknesses of the case and to make the upcoming mediation more productive.

23.    Prior to the mediation, Lead Counsel communicated extensively with the Lead Plaintiff regarding the strengths and weaknesses of the Litigation, potential outcomes, and acceptable settlement ranges for the upcoming mediation. In addition, Lead Counsel arranged for a representative of Lead Plaintiff to be available for regular consultation throughout the mediation.

24.    On the morning of February 11, 2008, the parties began mediation before Judge Politan. After lengthy negotiations, and despite several instances in which the parties appeared to have reached an impasse, an agreement-in-principal was reached at mediation late on the evening of February 12, 2008 after two full days of spirited negotiations.

25.    In view of the extensive investigation Lead Counsel conducted, the review and analysis of the documents obtained, discussions with experts and consultants as well as the discussions that occurred during the settlement negotiations, Lead Plaintiff was able to identify

the issues that were critical to the outcome of this Litigation. Lead Plaintiff considered the risks of litigation, the impact of the Court's prior Orders on the remaining allegations of the Second Amended Complaint, class certification issues, the likelihood of avoiding summary judgment after additional, extensive discovery, and, if successful, the substantial risk, expense, and length of time to prosecute the Litigation through trial and the inevitable subsequent appeals. Viewed in this light, the settlement negotiated through hard-fought mediation provides an immediate recovery for the Class without the potentially substantially risk, expense, and delay of continued litigation. As set forth above, Lead Plaintiff participated extensively this analysis and was consulted with and kept apprised concerning the settlement negotiations and mediation. Lead Plaintiff ultimately determined that the settlement offer agreed to was fair, reasonable and in the best interests of the Class.

### G.    The Settlement

26.    After an agreement-in-principle was reached to settle the Litigation for $6.875 million, plus interest, Lead Counsel undertook to prepare an initial draft of the Stipulation and its exhibits, including a proposed preliminary approval order, notice of pendency and settlement of class action and a Proof of Claim and Release form to be mailed to members of the Class, summary notice for publication, and a proposed final judgment. Further negotiations between the parties resulted in many changes and re-drafts of these documents. After many hours of discussion and drafting, on April 9, 2008, Lead Plaintiff filed the parties' Joint Motion for Preliminary Approval of Class Action Settlement, and Incorporated Memorandum of law in Support thereof, seeking entry of an order: (1) preliminarily approving the settlement of the Litigation, as memorialized in the Stipulation, which was attached as an exhibit; (2) approving the form of Notice, which was attached to the Stipulation; (3) approving the form of the Summary Notice, which was attached to the Stipulation; and (4) scheduling a hearing to determine whether the settlement should be given final approval and to establish dates for submission of proofs of claim, dissemination of Class notice, and other relevant deadlines.

**H.    Preliminary Approval of Settlement and Mailing and Publication of Notice of Settlement**

27.    On June 2, 2008, after requesting and obtaining additional briefing regarding certain issues and holding a hearing to consider the proposed settlement, the Court preliminarily approved the terms of the settlement and directed Lead Plaintiff to cause the mailing of the Notice and the Proof of Claim and Release form (the "Proof of Claim") to all potential Class members identifiable with reasonable effort.  The Notice Order appointed Strategic Claims Services ("SCS") to serve as Claims Administrator, with responsibility for supervising and administering the notice procedure.  Since that date, Lead Counsel have worked diligently to ensure that SCS performs its duties, as well as respond to Class member questions and inquiries.

**I.    Factors To Be Considered In Determining Whether To Approve The Settlement**

28.    It is established that a class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  It is my understanding that the Court must now determine whether the settlement is "'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir.1977). Over 55,000 Class members in this action have been sent the Court-approved notice of the terms of the settlement in accordance with the Notice Order.  As noted above, no Class member has objected to the settlement or sought exclusion from the settlement. For this reason and all of the other reasons explained below, I believe that this settlement satisfies the criteria for judicial approval.

**1.    The Settlement Was Fairly And Aggressively Negotiated By Counsel**

29.    As set forth above, the parties negotiated the terms of the settlement at arm's length with the assistance of a highly qualified and experienced mediator.  The settlement was the product of numerous meetings and conferences with Lead Plaintiff, as well as Lead Counsel

and Defendants' counsel, and was reached in principle at and through mediation.  Throughout the course of the negotiations and mediation, all parties were represented by attorneys with extensive experience in securities litigation in general and securities class actions in particular.  The settlement was the result of a process that was entirely adversarial in nature and, as a result, virtually ensured that the result produced was a fair, reasonable and adequate compromise.

### 2.    Serious Questions Of Law And Fact Placed The Outcome Of The Class Action In Significant Doubt

30.    Another factor to be considered in assessing the merits of a class action settlement -- whether serious questions of law and fact exist -- supports the conclusion that the settlement is fair, reasonable and adequate.

31.    Courts acknowledge that pursuing litigation to completion is inherently risky and costly.  *See Woodward v. NOR-AM Chem. Co.*, No. 94-0780-CB, 1996 WL 1063670, at *16 (S.D. Ala. May 23, 1996) ("In any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.") (citation omitted).  Courts attempting to balance this factor have recognized "that stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  This factor requires the Court to balance the likelihood of ultimate success on the merits against the relief offered by the proposed Settlement. *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992).

32.    Lead Plaintiff's theory on loss causation was that several stock price drops during the Class Period were attributable, at least in part, to Defendants' misrepresentations or omissions.  In addition to challenging Lead Plaintiff's proofs of fraud, materiality and scienter, as well as damages, Defendants challenged the existence of loss causation and relied on analyst reports attributing the loss in stock value concerning the November 3, 2005 and January 19, 2006 disclosures to other factors and challenged the existence of loss causation in the instance of the March 15, 2006 disclosure on the basis that no disclosure resulted in a decline of stock value,

-10-

arguing, instead, that market uncertainty alone resulted in any losses incurred.

33.    Defendants argued vigorously in their Motions to Dismiss and during settlement negotiations that both the initial complaints, the Amended Complaint and the Second Amended Complaint failed to allege the essential element of loss causation. Defendants were steadfast in taking the position that economic evidence would establish that Lead Plaintiff would be unable to prove any damages resulting from the alleged false and misleading statements because any stock price declines were caused by outside market forces.

34.    While Lead Plaintiff and its counsel believe that their theory of loss causation satisfied the standard set out by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), Lead Plaintiff's ability to prove the essential element of loss causation at trial was uncertain.

35.    As is evident from the Motions to Dismiss, falsity was a hotly contested issue in this Litigation, which may have proven difficult to establish at trial. Defendants took the position that FARO's Class Period statements were, in fact, truthful and/or that any purportedly false statements were immaterial as a matter of law. Falsity and materiality were essential elements of Lead Plaintiff's claims. Proving the falsity and materiality of any of Defendants' actionable Class Period statements would have been a significant hurdle on a motion for summary judgment and at any trial.

36.    The amount of provable damages in this Litigation also was very much in question. Damages in cases such as these are always difficult to estimate; provable damages were unlikely to exceed Lead Plaintiff's expert's high estimate ($72.4 million, assuming a virtual "home run" on all of the post motion to dismiss issues remaining in the case) or zero, Defendants' asserted view. In fact, based on Lead Plaintiff's expert analysis, the likely recoverable damages in the event that Lead Plaintiff prevailed on all claims would potentially result in an award of significantly less than this amount, based upon questions regarding the proportion of damages attributable to the claims asserted, as opposed to other factors, that

Defendants indicated they would raise as the centerpiece of their defense. Furthermore, as noted above, Defendants argued that no damages could be proven at all. At trial, the damage assessments of Lead Plaintiff's and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would have been reduced to a "battle of the experts."

37.    Although Lead Plaintiff believes that it would be able to provide admissible and convincing expert testimony on every essential element of its claims, many obstacles to success lay before them when the parties attended mediation and the settlement was reached. The Litigation could have foundered based on Lead Plaintiff's failure to establish loss causation, falsity, or other essential elements, such as scienter or materiality. Even if each of these elements was established, proving damages in excess of the settlement amount of $6.875 was very much in doubt. The uncertainty as to Lead Plaintiff's ability to prove liability and damages above the settlement amount strongly supports the settlement in this case.

38.    Collectively, these factors could potentially lead to dismissal of all or part of Lead Plaintiff's claims on a motion for summary judgment, or even lead to a defense verdict at trial. Accordingly, although it believed that it had a prospect of succeeding at trial, in light of the potential defenses available to Defendants, Lead Plaintiff responsibly opted for an immediate and tangible benefit for the Class, rather than unnecessarily expending a substantial amount of time and effort on a possibly fruitless endeavor. In sum, Lead Plaintiff and Lead Counsel took these factors into account and concluded that a settlement that provided an immediate and certain cash benefit to the Class in the amount agreed upon was a far better result in light of all of the risks attendant in this litigation.

### 3.    The Judgment Of The Parties That The Settlement Is Fair And Reasonable Provides Additional Support For Approval Of The Settlement

39.    Another factor in considering whether to approve the settlement of a class action is whether, in the judgment of the parties, the settlement is fair and reasonable. As outlined above, the settlement was the product of arm's-length negotiations at mediation between

adversaries with significant experience with the assistance of a highly respected mediator. Indeed, Judge Politan recommended the settlement to all parties as fair and reasonable under the facts of the case.

40.    Lead Plaintiff and Lead Counsel strongly believe that the settlement represents an outstanding resolution for the Class under the facts of this case. As noted above, not one of the 55,000 Class members to whom direct and detailed notice of the settlement was directly sent has chosen to object or opt-out of the settlement. This unanimous support by the Class supports the judgment of Lead Plaintiff and Lead Counsel.

**J.    The Plan Of Allocation Should Be Approved**

41.    Pursuant to the Court approved Notice, all Class members who wish to participate in the distribution of the Net Settlement Fund must submit a proper Proof of Claim form. As provided in the Stipulation, after deducting all appropriate taxes, administrative costs, attorneys' fees and reimbursement of expenses, the Net Settlement Fund shall be distributed according to the Plan of Allocation.

42.    Lead Plaintiff formulated the Plan of Allocation after consulting with its expert consulting firm regarding causation and damages in order to arrive at a fair method to divide the Net Settlement Fund for distribution among Class members. The proposed Plan of Allocation attempts to eliminate the effects of market forces unrelated to the alleged misrepresentations and omissions at issue in this case, as well as to simplify claims administration with the attendant cost reduced to the Class. Thus, the proposed Plan of Allocation is designed to fairly and rationally allocate the proceeds of the settlement among Class members, based on relative damages suffered by purchasers of different types of FARO publicly traded securities during the Class Period.

43.    In recognition of the fairness of the Plan of Allocation, there have been no objections of any kind to the settlement or the Plan of Allocation.

**K.    Factors To Be Considered In Support Of The Requested Attorneys' Fee Award And Request For Reimbursement Of Expenses**

44.    The Notice sent to Class members provides that Lead Counsel may apply for an award of attorneys' fees not to exceed 30% of the Settlement Fund, plus expenses of up to $200,000.  As discussed in the accompanying Memorandum of Law, the Eleventh Circuit has held that the requested percentage falls within the range of reasonable fees in common fund cases.  No Class members have objected to the requested attorneys' fees or expenses.

**1.    The Requested Fee Award Is Within The Range Of Fees Approved In This District And Circuit**

45.    In complex securities actions such as this, courts within this District and Circuit and nationwide have frequently awarded fees of 30% or more of common funds obtained.  *See, e.g., Underwood v. Lambert*, No. 02-cv-21154-CMA/Turnoff (S.D. Fla. Jan. 26, 2007) (30% fee); *Primavera Investors v. Liquidmetal Techs., Inc.*, No. 04-cv-919-T-23EAJ (M.D. Fla. Oct. 19, 2006) (30% fee); *Reina v. Tropical Sportswear Int'l, Inc.*, No. 03-cv-1958-T-23TGW (M.D. Fla. July 11, 2006) (30% fee); *In re Hamilton Bancorp Sec. Litig.*, No. 01-156-CIV-Martinez (S.D. Fla. Mar. 21, 2005) (30% fee); *In re UniCapital Corp. Sec. Litig.*, No. 00-2054-CIV-Highsmith (S.D. Fla. Jan. 26, 2005) (30% fee); *In re Paradyne Networks, Inc.*, No. 00-cv-2057-T-17TBM (M.D. Fla. July 9, 2004) (30% fee); *In re Ins. Mgmt. Solutions Group Sec. Litig.*, No. 8:00-CV-2013-T-26MAP (M.D. Fla. July 18, 2003) (30% fee); *Moriarty v. Let's Talk Cellular Inc.*, No. 99-0226-Civ-Moreno (S.D. Fla. May 6, 2003) (30% fee); *Graf v. Cyber-Care Inc.*, No. 00-8404-Civ-Ryskamp (S.D. Fla. Dec. 20, 2002) (30% fee); *Holmes v. Baker*, No. 99-2560-Civ-Moreno (S.D. Fla. Aug. 21, 2002) (30% fee); *Shipping Fin. Servs. v. Able Telcom Holding Corp.*, No. 98-8633-Civ-Hurley (S.D. Fla. May 23, 2002) (30% fee); *In re Phoenix Int'l Ltd. Inc. Sec. Litig.*, No. 99-1495-Civ-ORL-18C (M.D. Fla. May 6, 2002) (30% fee); *In re CHS Sec. Litig.*, Case No. 99-8186-Civ-Gold (S.D. Fla. Mar. 1, 2002) (30% fee); *Lopez v. Checkers Drive-In Rests., Inc.*, No. 94-282-Civ-T-17C (M.D. Fla. 1996) (30% fee); *Minnick v. Pages, Inc.*, No. 95-277-Civ-T-21C (M.D. Fla. 1996) (30% fee); *Tapken v. Brown*, No. 90-0691-Civ-Marcus (S.D.

-14-

Fla. 1995) (33% fee); *Kaser v. Swann*, No. 90-607-Civ-ORL-3A18 (M.D. Fla. 1993) (30% fee);

*In re Perfumania, Inc. Sec. Litig.*, No. 92-1490-Civ-Marcus (S.D. Fla. 1993) (30% fee); *In re*

*Homeshopping Network Sec. Litig.*, No. 87-428-Civ-T-13(A) (M.D. Fla. 1991) (33.3% fee).

46.    The percentage of the fund requested here is also comparable to fees that have

been awarded in class actions in other jurisdiction. *E.g., In re Thirteen Appeals Arising out of*

*the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 300 (1st Cir. 1995 (30.9% fee); *In re*

*Copley Pharm.*, No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (33.3% fee); *Fulco v. Cont'l*

*Cablevision, Inc.*, No. 89-1342-WGY (D. Mass. Mar. 30, 1994) (32% fee); *In re Crazy Eddie*

*Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8% fee); Gulf Oil/Cities Serv., 142 F.R.D. 588

(30% fee); *In re Genentech, Inc. Sec. Litig.*, No. C-88-4038 (DLJ) (N.D. Cal. 1991) (30% fee);

*Malanka v. de Castro*, No. 85-2154-MC, 1990 U.S. Dist. LEXIS 18171, at *3 (D. Mass. Nov. 20,

1990) (33% fee).

47.    In fact, District Courts in this Circuit have recently awarded percentages as high

as 33.3% of the gross settlement fund. *E.g., In re HealthTronics Surgical Servs., Inc. Sec. Litig.*,

No. 03-CV-2800-CC (N.D. Ga. Dec. 1, 2005) (33% fee); *In re Profit Recovery Group Int's, Inc.*

*Sec. Litig.*, No. 00-CV-1416-CC (N.D. Ga. May 26, 2005) (33.3% fee); *In re Clarus Corp. Sec.*

*Litig.*, No. 00-cv-2841-CAP (N.D. Ga. Jan. 6, 2005) (33.3% fee); *Cheney v. Cyberguard Corp.*,

No. 98-6879-CIV-Gold/Simonton (S.D. Fla. May 7, 2004)(33.3% fee).

48.    Lead Counsel's efforts, which achieved a favorable result for the Class, came with

great risk and substantial expense over the course of almost three years of litigation to date.  Lead

Counsel were unwavering in their dedication to the interests of the Class and invested the time

and resources necessary to bring this case to a successful conclusion.  The requested fee is

reasonable based on the quality of Lead Counsel's work and the substantial benefit obtained for

the Class.

49.    It also bears noting that the Memorandum of Understanding negotiated by the

parties permitted Lead Counsel to seek 33% of the common fund as attorneys' fees.  After

reviewing their lodestar and consulting with Lead Plaintiff, however, it was determined that it would be more appropriate to seek 30% of the fund created as fair and reasonable compensation.

### 2.    The Status And Extent Of The Litigation

50.    As discussed above, this case was only settled after Lead Counsel had conducted an extensive investigation into the Class' claims, interviewed dozens of material witnesses, thoroughly research the facts and law applicable to the Class' claims and Defendants' defenses, prepared and filed fact-specific, detailed complaints, ultimately succeeded in opposing Defendants' Motions to Dismiss, in part, engaged in fact discovery, including review of tens of thousands of pages of documents and participating in depositions, developed and filed a Motion for Class Certification and engaged in arm's-length settlement negotiations with the assistance of an expert mediator.  Lead Counsel's tireless prosecution of this case over the course of almost three years strongly weighs in favor of the fee award that has been requested.

51.    The prosecution of this action has been highly focused and time-intensive.  During the past three years, Lead Counsel have, among other things: independently investigated Lead Plaintiff's claims, including interviews of numerous former FARO employees and consulted with expert advisors; conducted extensive efforts in connection with, *inter alia*, the preparation of the Amended Complaint and the Second Amended Complaint; opposed Defendants' multiple motions to dismiss; worked with accounting industry and economic experts to develop a case on liability and to establish damages and loss causation; regularly communicated with the Lead Plaintiff and other Class members regarding the progress of the case, litigation strategy and settlement opportunities; and mediated the case before a highly respected mediator and successfully negotiated the settlement with Defendants' counsel.  The extensive efforts of Lead Counsel over the last several years resulted in a positive recovery for the Class – as evidenced by the Class members' reaction to it.  As a result, the time and labor involved and the result achieved fully justify the requested fee.

52.    During the course of my work in this case, I have been involved in the following

activities: (a) developing Lead Plaintiff's litigation strategy, investigating and evaluating Lead Plaintiff's claims and Defendants' asserted and potential bases to defend this action; (b) conducting formal and informal discovery; (c) researching, drafting and reviewing pleadings; (d) attending court hearings; (e) actively participating in settlement discussions and mediation; (f) drafting settlement papers and crafting the settlement procedures; (g) interacting and working with opposing counsel; (h) preparing the preliminary and final approval papers submitted to this Court; and (i) reviewing the time and expense entries of my Firm and The Edgar Law Firm, in connection with preparation of the summaries and time and expenses provided below.

53.    I have reviewed the time records made and entered on a contemporaneous basis by lawyers and other legal personnel connected or otherwise affiliated with my Firm and The Edgar Law Firm in connection with the prosecution of this action. These records show that from the inception of the litigation through August 31, 2008, Lead Counsel have committed a total of 4,212.10 hours to the prosecution of this action, amounting to a lodestar of $1,629,644.50. The hourly rates for the paralegals and attorneys included in this litigation (ranging from $95 to $480) are reasonable and well within the range of hourly rates that are approved routinely in this jurisdiction and elsewhere for attorneys with similar complex class action experience. *See In re TECO Energy Sec. Litig.*, Case No. 8:04-CA-1948-T-27EAJ (M.D.Fla. October 18, 2007)(finding 3,000 hours of time not to be exceptional in such a complex case but finding hourly rates of up to $700 per hour to be excessive). In addition, the rates reported in the chart below (a) were the hourly rates regularly charged by Lead Counsel to hourly clients at the inception of this litigation, and (b) were not adjusted upward to account for increases during the pendency of this action for purposes of calculating Lead Counsel's lodestar. Based on my experience, I also am aware that Lead Counsel will spend significant additional time in connection with any final approval of this settlement, settlement administration and working with Class members to ensure that their claims have been received and are appropriately processed.

-17-

54.    The following is a summary of the time devoted to this litigation by Lead Counsel based upon the contemporaneous time records maintained by each firm:

| Name | Position | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Elena M. DiBattista | Paralegal | 87.60 | $105.00 | $     9,198.00 |
| John F. Edgar | Partner | 207.00 | $350.00 | $    72,450.00 |
| John M. Edgar | Partner | 107.90 | $450.00 | $    48,555.00 |
| Patricia A. Garcia | Paralegal | 0.70 | $ 95.00 | $         66.50 |
| Kathy Haight | Paralegal | 9.40 | $105.00 | $        987.00 |
| Besty Ferling-Hitriz | Paralegal | 228.60 | $105.00 | $    24,003.00 |
| Patrick A. Klingman | Of Counsel | 993.70 | $405.00 | $   402,448.50 |
| Karen M. Leser | Associate | 322.90 | $335.00 | $   108,171.50 |
| Pamela Mauger | Paralegal | 23.00 | $105.00 | $     2,415.00 |
| Susan Moss | Paralegal | 9.10 | $105.00 | $        955.50 |
| James E. Miller | Partner | 1192.10 | $450.00 | $   536,445.00 |
| Nathan Zipperian | Associate | 297.60 | $335.00 | $    99,696.00 |
| Laurie Rubinow | Of Counsel | 3.00 | $335.00 | $     1,005.00 |
| James C. Shah | Partner | 275.40 | $420.00 | $   115,668.00 |
| Scott. R. Shepherd | Partner | 426.40 | $480.00 | $   204,672.00 |
| Theresa Turner | Paralegal | 27.70 | $105.00 | $     2,908.50 |
| **Totals** | | 4,212.10 | | $1,629,644.50 |

55.    The requested attorneys' fee of $2,062,500 ($6,875,000 x .30) amounts to a modest multiplier of only 1.266 on the time spent by Lead Counsel to date in connection with the prosecution of this action.

56.    I also have reviewed Lead Counsel's contemporaneous records regarding the disbursements and expenses incurred in connection with the prosecution of this case. The total disbursements and expenses of Lead Counsel for which reimbursement is sought are detailed

below:

| Category Of Disbursement | Total Amount |
|---|---|
| Expert Witness Fees[1] | $ 57,421.14 |
| Filing, Witness And Service Fees | $     639.75 |
| External Copying Charges | $   9,172.90 |
| Internal Copying Charges | $   8,580.60 |
| Investigative Fees[2] | $ 65,527.50 |
| Long Distance, Facsimile And Telephone Conference Charges | $   1,587.17 |
| Mediation Fees[3] | $ 12,824.00 |
| Postage, Courier And Overnight Delivery Charges | $   4,919.39 |
| Transcription - Deposition/Court Reporter Fees | $   1,379.30 |
| Travel Expenses[4] | $ 16,464.82 |
| Westlaw And Other On-Line Research And Related Charges | $   4,265.23 |
| Total Disbursements/Expenses | $182,781.80 |

[1]Expert witness fees relate to charges by CBIZ Valuation Group, LLC in Dallas, Texas and The Center for Forensic Economic Studies in Philadelphia, Pennsylvania.

[2]Investigative fees all were paid to Gryphon Investigations in White Plains, New York.

[3]This amount reflects the amount invoiced to Lead Plaintiff and Lead Counsel by The Honorable Nicholas H. Politan (ret.)

[4]Travel expenses include all charges for coach air fare and hotel expenses and specifically relate to travel by (a) John F. Edgar to Dallas, Texas (one day) and New York, New York (two days) for depositions and meetings with experts; (b) John M. Edgar to West Palm Beach, Florida (three days) for the mediation and preparation for the same; (c) Patrick A. Klingman to Dallas, Texas (two days) for meetings with expert witnesses; (d) Scott R. Shepherd to Orlando, Florida (three days), West Palm Beach, Florida (three days), Kansas City, Missouri (two days) and New York, New York (two days) for client meetings, court hearings, depositions and the mediation; (e) James E. Miller to Dallas, Texas (two days), Kansas City, Missouri (two days), Orlando, Florida (three days), Miami, Florida (one day) and Philadelphia, Pennsylvania (one day) for client meetings, court hearings, expert witness meetings, the mediation and meetings with fact witnesses; and (f) James C. Shah to Orlando, Florida (two days) for meetings with fact witnesses. At all times, in an effort to minimize costs, Lead Counsel selected competitive air fares, and cost competitive hotels. These travel expenses do not include any amounts for Lead Counsel to travel to and attend the Court's hearing to consider whether the settlement should be finally approved on October 3, 2008.

57.     The expenses detailed above do not include future expenses that Lead Counsel will incur in responding to any Class member inquiries regarding the settlement or any related expenses that invariably are incurred following any final approval of a class action settlement.

### 3.     The Risks Of Litigation And The Need To Ensure The Availability Of Competent Counsel In High Risk, Contingent Securities Litigation

58.     Lead Counsel undertook this litigation on a wholly contingent basis. Lead Counsel were obligated to ensure that sufficient resources of attorney time were dedicated to the prosecution of the case and that funds were available to compensate staff and the out-of-pocket costs required by such cases. By devoting these resources, Lead Counsel were necessarily required to forgo other opportunities that may have been as or more rewarding than this action, with absolutely no assurance of any recovery. In fact, Lead Counsel elected not to pursue certain engagements as a direct result of this litigation in which certain attorneys would have been compensated on an hourly basis at the rates identified above.

59.     In light of the contingent nature of the practice of representing lead plaintiffs and putative classes in litigation of this kind, the financial burden on lead counsel is greater than in more typical cases, especially since lead counsel typically advance their time for at least several years but also advance the expenses of such litigation.

60.     Lead Counsel have personally been involved in cases where thousands of hours are devoted to a representation and no compensation of any kind is received. Indeed, federal appellate reports are filled with opinions affirming dismissals with prejudice in securities class actions. *See, e.g., Ziemba v. Cascade Int'l. Inc.*, 256 F.3d 1194 (11th Cir. 2001). Moreover, the many recent appellate decisions affirming summary judgments and directed verdicts for defendants in securities class actions show that surviving a motion to dismiss is by no means a guaranty of a recovery. *See, e.g., In re Digi International, Inc., Sec. Litig.*, 14 Fed.Appx. 714 (8th Cir. 2001); *see also In re JDS Uniphase Corp. Sec. Litig.*, 2008 WL 753758 (N.D.Cal. March 19, 2008)(discussing jury verdict in favor of defendants in securities class action).

61.     Lead Counsel devoted substantial time to researching the underlying causes of

-20-

action prior to commencing this action and worked diligently to obtain the best result possible for Class members.  Lead Plaintiff has been actively involved in this case throughout the course of the litigation to ensure that its rights and the rights of Class members were vigorously protected. Lead Plaintiff participated in every step of the litigation, was in frequent contact with Lead Counsel, and was an asset to the prosecution of this action.  Lead Plaintiff routinely conferred with Lead Counsel, and assisted, *inter alia*, in the production of documents and information necessary to commence and prosecute this action.

62.    Lead Counsel know from personal experience that, despite their most vigorous and competent efforts, success in contingent litigation such as this is never guaranteed.  In similar cases, counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars of time and received no compensation at all.  Even a victory at the trial stage is not a guarantee of success.  A good example is *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997), in which the Eleventh Circuit reversed an $18.3 million jury verdict won by class plaintiffs in a securities class action after almost seven years of litigation and rendered judgment for the defendant.  The Court of Appeals ruled for the first time in this Circuit that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations, although other circuits had held that such proof may establish loss causation.  *Id.* at 1448-449.

63.    The burden of potential financial loss that Lead Counsel accepted is compounded by their effective preclusion of other employment by this case.  This action has required a significant time and financial commitment by counsel, who have expended a very significant number of hours in the prosecution of the Litigation and expended almost $200,000 to finance this litigation, with no guarantee that those funds would ever be reimbursed.  The time and expenditures were fully warranted to fully develop this case and prepare it for trial.

64.    Indeed, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be

realized only after a considerable and difficult effort. The contingent nature of Lead Counsel's representation strongly favors the requested percentage.

### 4.    The Standing And Experience Of Lead Counsel

65.    The standing and experience of Lead Counsel also supports the requested award. As this Court has recognized when appointing KCM's chosen counsel as Lead Counsel, the attorneys who prosecuted this action are highly experienced and skilled practitioners in the securities litigation field. Lead Counsel have served in lead roles in class action litigation throughout the country and have been recognized for their diligence and the outstanding results that they have obtained in these cases. Courts have routinely held that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain parity in the representation with that available to large corporate interests. If this important public policy is to be carried out, the courts must award fees that will adequately take into account the enormous risks undertaken with a clear view of the economics of a securities class action.

### 5.    The Standing And Caliber Of Opposing Counsel

66.    The Defendants in this litigation were represented by Skadden, Arps, Slate, Meagher & Flom LLP and Foley & Lardner LLP, as well as K&L Gates LLP, which are among the finest defense firms in the country, with substantial experience in the defense of complex securities litigation. In the face of this formidable opposition, Lead Plaintiff and Lead Counsel developed their case so as to persuade Defendants to settle this litigation on terms that were favorable to the Class.

### 6.    Nature And Length Of Relationship With The Client

67.    Throughout the prosecution of the action, Lead Counsel were in frequent contact with the Court-appointed Lead Plaintiff. Lead Plaintiff was apprised of and consulted with regarding every major development in the case and, ultimately, approved and supported the

settlement of the Litigation on the terms proposed. Lead Counsel have dedicated their efforts to protect the best interests of Lead Plaintiff and the Class throughout this Litigation. Moreover, the Lead Plaintiff, which supports the requested fee award, has a preexisting attorney-client relationship with members of the Lead Counsel team and is familiar with the quality and quantity of the work performed to achieve the result obtained on behalf of the Class.

       **7.**     **The Reaction Of The Class Supports The Requested Fee Award**

     68.    As set forth in the Affidavit of Paul Mulholland of Strategic Claims Services, notices were mailed to over 55,000 potential Class members and their nominees, and a Summary Notice was published in the national edition of *Investor's Business Daily*. The Notice and Proof of Claim were also posted on the Claims Administrator's website. Class members were informed in the Notice that Lead Counsel would apply for a fee of 30% of the Settlement Fund, plus expenses not to exceed $200,000 and were advised of their right to object to Lead Counsel's fee and expense request. To date, there have been no objections to Lead Counsel's request. Given the size of the Class and the fact that there are no objections to Lead Counsel's request is indeed a "'rare phenomenon'" and strong evidence that the requested fee is reasonable. *See Rite Aid*, 396 F.3d at 305 (citation omitted).

     69.    For the reasons explained above, as well as in the accompanying Motion and Memorandum of Law, I believe that Lead Plaintiff's Motion for Final Approval of the Class Action Settlement, Approval of the Plan of Allocation and Award of Attorneys' Fees and Costs should be granted in its entirety.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 26th day of September, 2008 at Chester, Connecticut.

Dated: September 26, 2008

                                 James E. Miller

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

|  |  |
|---|---|
| IN RE FARO TECHNOLOGIES<br>SECURITIES LITIGATION | Case No. 6:05-cv-1810-Orl-22DAB |

**AFFIDAVIT OF PAUL MULHOLLAND, CPA, CVA,**
**CONCERNING MAILING OF NOTICE TO CLASS MEMBERS OF PROPOSED**
**SETTLEMENT OF CLASS ACTION**

I, Paul Mulholland, being duly sworn, depose and say:

1.      I submit this affidavit in order to provide the Court and the parties to the above-captioned litigation with information regarding the mailing of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release form ("Claim") (collectively, "Notice Claim Form").  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I am the President of Strategic Claims Services ("SCS"), a nationally recognized claims administration firm.  I am a Certified Public Accountant and a Certified Valuation Analyst.  I have over sixteen (16) years of experience specializing in claims administration for class action settlements and I have administered over one-hundred fifty (150) cases.  SCS was established in April 1999 and has administered over one-hundred (100) class actions since its inception.  SCS was retained as the administrator to efficiently provide the Court approved Notice Claim Form to the Class and to provide administrative services as part of the settlement administration process in the above-captioned litigation.  Our services include supervising the printing of the Notice Claim Form; providing Notice Claim Forms to the Class; notifying brokerage

1

firms or other nominee accounts of the appropriate manner to provide individual notice to class members, both individually and on a published basis; distributing, accepting and processing Claim Forms filed by Class members; reviewing submitted Claim Forms for accuracy and completeness and to ensure that they are supported by sufficient documentary evidence; providing notice of deficient or rejected claims, when appropriate; calculating recognized losses of the Class, on both an individual and class-wide basis; and all other services necessary to administer this securities litigation class action settlement ("Settlement").

3.    To provide actual notice to all persons or entities who purchased or otherwise acquired the common stock and/or other publicly traded securities of FARO Technologies, Inc. ("FARO") between April 15, 2004 and March 15, 2006, inclusive ("Class Period"), we mailed, by first class mail, the Notice Claim Form approved by the Court to individuals and organizations identified on the records of FARO's transfer agent. These records reflect persons and entities that purchased common stock and/or other publicly traded securities of FARO for their own account or for their clients' account(s) during the Class Period. In addition, we mailed Notice Claim Forms to all brokerage companies, banks and trust companies contained on our master mailing list. This master list consists of the 773 largest banks and brokerage companies ("Nominee Account Holders"), as well as 1,119 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups") which may have traded FARO's common stock and/or other publicly traded securities in their clients' or their accounts. The mailing of Notice Claim Forms was done on or before July 2, 2008 as required by the Court's Order Preliminarily Approving Settlement and Providing For Notice pursuant to

the Federal Rule of Civil Procedure 23, dated June 2, 2008 (the "Court's June 2, 2008 Order"). Additionally, the Notice Claim Form was made available to the public at SCS's website.

4.    The Nominee Account Holders and Institutional Groups were asked to either forward Notice Claim Forms to beneficial holders directly (the cost for which they were reimbursed), or provide SCS with lists of the names and addresses of actual or beneficial holders so that SCS could mail Notice Claim Forms directly to them. A copy of a letter sent to these organizations is attached as **Exhibit I.**

5.    As required by the Court's June 2, 2008 Order, the Summary Notice was published once in the national edition of *Investor's Business Daily* as well as electronically over PrimeNewswire, a commonly used business newswire, on or before July 12, 2008. Attached as **Exhibit II** are the affidavit of publication for the *Investor's Business Daily* and an e-mail confirmation for PrimeNewswire publication.

6.    The notice procedures described in paragraphs two (2) through five (5) above are consistent with the procedures I have used in each of the class action securities litigation cases in which I have been involved with over the past sixteen years.

7.    To date, 55,091 Notice Claim Forms have been mailed. See **Exhibit III** for copy of the Notice Claim Form as mailed. SCS mailed 122 Notice Claim Forms to individuals and organizations from the shareholders list provided by FARO's Transfer Agent. As noted in paragraph 3 above, 1,892 Notice Claim Forms were sent to Nominee Account Holders and Institutional Groups. Also, to date, an additional 53,077 Notice Claim Forms were requested by the Nominee Account Holders and Institutional Groups and other individuals.

8.    Out of the 55,091 Notice Claim Forms mailed, 797 were returned as undeliverable mailings. Of these, 70 had forwarding addresses from the post office and SCS immediately re-mailed each of these potential Class members a Notice using the updated addresses. The remaining 727 were "skip-traced" to obtain updated addresses. SCS re-mailed Notices Claim Forms if updated addresses were provided.

9.    To date, SCS has not received any Requests for Exclusion. In addition, SCS has received no objections to the Settlement, Plan of Allocation or Lead Counsel's request for attorneys' fees and reimbursement of expenses. The Request for Exclusion and the Objection deadline was September 12, 2008.

*Paul Mulholland*

Paul Mulholland, CPA, CVA

Sworn to and Subscribed before me
This _26th_ day of September 2008
In the County of Delaware,
Commonwealth of Pennsylvania

*Christina L. Kerper*

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Christina L. Kerper, Notary Public
Upper Providence Twp., Delaware County
My Commission Expires Nov. 12, 2010

Member, Pennsylvania Association of Notaries

EXHIBIT I

# REQUEST FOR NAMES AND ADDRESSES OF CLASS MEMBERS

STRATEGIC CLAIMS SERVICES
600 N. JACKSON STREET, SUITE 3
MEDIA, PA  19063
PHONE:  (610) 565-9202        EMAIL: info@strategicclaims.net        FAX:  (610) 565-7985

**July 2, 2008**

Enclosed is a copy of the "NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION" in the In re FARO Technologies, Inc. Securities Litigation.  This letter is being sent to all entities whose names have been made available to us, or which we believe may know of potential class members.

**We request that you assist us in identifying any individuals who fit the following description:**

      1.)  All persons who **purchased or otherwise acquired** FARO Technologies, Inc. ("FARO") securities between April 15, 2004, and March 15, 2006, inclusive, and were allegedly damaged thereby.

Excluded: a Defendant, a member of the immediate family of one of the Individual Defendants listed in question 1 of the Notice, an entity in which any Defendant has a controlling interest and the legal representatives, heirs, successors, predecessors in interest or assigns of any excluded party, or the Judge(s) assigned to this case.

**The information below may assist you in finding the above requested information.**

| | |
|---|---|
| In re FARO Techologies, Inc. Securities Litigation<br>United States District Court for the Middle District<br>   of Florida<br>Case Number: 6:05-cv-1810-Orl-22DAB<br>Objection Deadline: September 12, 2008<br>Exclusion Deadline: September 12, 2008<br>Settlement Fairness Hearing:  October 3, 2008<br>Claims Filing Deadline: October 30, 2008 | Cusip No. (Common Stock):      311642102 |

## THE COURT HAS DIRECTED THAT YOU PROVIDE THE REQUESTED INFORMATION WITHIN TEN (10) DAYS FROM THE DATE OF THIS NOTICE.

Please comply in one of the following ways:
1. If you have no beneficial owners, please so advise us in writing; or
2. Supply us with the names and addresses of your beneficial owners and we will do the mailing of the Notice and Proof of Claim and Release. **Please provide us this information electronically.**  If you are not able to do this, labels will be accepted but it is important that a hardcopy list also be submitted of the names of your clients; or
3. Advise us of how many beneficial purchasers/owners you have and we will supply you with ample forms to do the mailing.

You are on record as having been notified of this legal matter.  Any reasonable research and mailing expenses may be billed directly to our office, payable subject to the approval of the Court.  You should note on your invoice that expenses incurred were for compliance with the Order of the Court.  Please call us directly at the above number should you have any questions.

Thank you for your prompt response.

    Sincerely,

    Claims Administrator

# EXHIBIT II

# INVESTOR'S BUSINESS DAILY®

### Affidavit of Publication

Name of Publication:    Investor's Business Daily
Address:    12655 Beatrice Street
City, State, Zip:    Los Angeles, CA 90066
Phone #:    310.448.6718
State of:    California
County of:    Los Angeles

    I, Anthony Hall for the publisher of **Investor's Business Daily** , published in the city of _Los Angeles_ , state of _California_ , county of _Los Angeles_ hereby certify that the attached legal notice for IN RE FARO TECHNOLOGIES SECURITIES LITIGATION regarding Case No. 6:05-cv-1810-Orl-22DAB was printed in said publication on the following date(s):

### JULY 10th, 2008

State of California
County of _Los Angeles_

Subscribed and sworn to (or affirmed) before me on this _10th_ day of _July_ ,

20 _08_ , by _____ , proved to me on the basis of

satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)



RICHARD C. BRAND II
Commission # 1727106
Notary Public - California
Los Angeles County
My Comm. Expires Feb 25, 2011

INVESTOR'S BUSINESS DAILY

THURSDAY, JULY 10, 2008    **B11**

# Stocks' Weakne



## LEGAL NOTICES

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

IN RE FARO TECHNOLOGIES    | Case No. 6:05-cv-1810-ORL-22DAB
SECURITIES LITIGATION       |

**SUMMARY NOTICE**

TO: ALL PERSONS WHO PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK AND/OR OTHER PUBLICLY-TRADED SECURITIES OF FARO TECHNOLOGIES ("FARO") BETWEEN APRIL 15, 2004 AND MARCH 15, 2006, INCLUSIVE (THE "CLASS"):

YOU ARE HEREBY NOTIFIED, that the above-captioned action has been preliminarily certified as a class action and that a settlement for $6,875,000 in cash has been proposed (the "Settlement"). A hearing will be held before the Honorable Anne C. Conway, United States District Court for the Middle District of Florida, 401 West Central Boulevard, Courtroom 6A, Orlando, Florida at 9:00 a.m., on October 3, 2008, to determine whether the proposed Settlement of this class action and the Plan of Allocation of settlement proceeds should be approved by the Court as fair, reasonable, and adequate, to consider the application of Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses, and to consider the application for reimbursement of expenses of the Lead Plaintiff.

IF YOU ARE A MEMBER OF THE CLASS DESCRIBED ABOVE, YOUR RIGHTS WILL BE AFFECTED AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT FUND. If you have not yet received the full printed Notice of Pendency and Proposed Settlement of Class Action and a Proof of Claim and Release form, you may obtain copies of those documents by calling 866-274-4004 or writing to the Claims Administrator at:

FARO Shareholder Litigation
Claims Administrator
c/o Strategic Claims Services
600 North Jackson Street, Suite 3
Media, PA 19063

You may also download a claim form from www.strategicclaims.net.

To participate in the Settlement, you must submit a Proof of Claim and Release to the Claims Administrator no later than October 30, 2008. If you are a Class Member and do not exclude yourself from the Class, you will be bound by the Final Judgment of the Court. To exclude yourself from the Class, you must submit a Request for Exclusion postmarked no later than September 12, 2008. If you are a member of the Class and do not submit a proper Proof of Claim or elect to exclude yourself from the Class, you will not share in the Settlement but you nevertheless will be bound by the final judgment of the Court.

Any objection to the Settlement must be filed with the Court at the address below and served by hand or first class mail on the attorneys listed below on or before September 12, 2008.

Court:
CLERK OF THE COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
401 West Central Boulevard
Suite 1200
Orlando, FL 32801-0120

Co-Lead Counsel for Plaintiffs:          Counsel for the Defendants:
Scott R. Shepherd                         Jay B. Kasner
Shepherd, Finkelman, Miller & Shah, LLP   Skadden, Arps, Slate, Meagher
1640 Town Center Circle                   & Flom LLP
Suite 216                                 Four Times Square
Weston, FL 33326                          New York, NY 10036
Tel: (954) 943-9191                       Tel: (212) 735-3000
Fax: (954) 943-9173                       Fax: (212) 735-2000

Further information may be obtained by directing your inquiry to the Claims Administrator at the same address and telephone number noted above.

DATED:                BY ORDER OF THE COURT UNITED STATES DISTRICT COURT,
July 10, 2008         MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION

**Josephine Cecala**

**From:**     support@primenewswire.com
**Sent:**     Thursday, July 10, 2008 8:02 AM
**To:**        jcecala@strategicclaims.net
**Subject:** PrimeNewswire Cross Time Report: Shepherd, Finkelman, Miller & Shah, LLP

 *Cross Time Report*

**Cross Time:** July 10, 2008 at 08:00 AM (Eastern)

**Headline:**    Summary Notice Announced by Shepherd, Finkelman, Miller & Shah, LLP -- FARO

This email message serves as a formal confirmation that your release was transmitted on
PrimeNewswire's distribution network as requested, including any fax or email broadcasts.

If you have any questions, comments or concerns, please reply to this message, contact your account
manager, or call our Customer Service Center at 800-307-6627, or 310-642-6930, and enter option #1

Copyright © 2008 PrimeNewswire, Inc.

**EXHIBIT III**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE FARO TECHNOLOGIES<br>SECURITIES LITIGATION | Case No. 6:05-cv-1810-Orl-22DAB |

## NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

*IF YOU PURCHASED OR OTHERWISE ACQUIRED THE COMMON STOCK AND/OR OTHER*
*PUBLICLY-TRADED SECURITIES OF FARO TECHNOLOGIES, INC. BETWEEN*
*APRIL 15, 2004 AND MARCH 15, 2006, INCLUSIVE (THE "CLASS"), YOU*
*COULD GET A PAYMENT FROM A CLASS ACTION SETTLEMENT.*

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**Settlement Fund:** $6,875,000 in cash. If you are in the Class, your recovery will depend on the number of shares of common stock and/or other publicly-traded securities you purchased or otherwise acquired and the timing of your purchases and any sales. Depending on the number of eligible shares or options that participate in the Settlement and when those shares or options were purchased or otherwise acquired and sold, the estimated average recovery per share of common stock for Members of the Class will be approximately $0.505 per damaged share before deduction of any taxes on the income thereof, notice and administration costs and the attorneys' fees and expense award as determined by the Court.[1] A Class Member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's recognized claim as compared to the total recognized claims submitted. Depending on the number of claims submitted, when during the Class Period a Class Member purchased or otherwise acquired FARO common stock and/or other publicly-traded securities, the purchase price paid, and whether those shares of common stock or other publicly-traded securities were held at the end of the Class Period or sold during the Class Period, and, if sold, when they were sold and the amount received, an individual Class Member may receive more or less than this estimated average amount. See Plan of Allocation attached as Exhibit A hereto for more information on your Recognized Claim.

**Reasons for Settlement:** The Settlement resolves a lawsuit by Lead Plaintiff alleging that FARO Technologies, Inc. ("FARO") and certain of its officers, Simon Raab, Gregory Fraser and Barbara Smith (collectively the "Defendants"), improperly overstated FARO's financial results and made certain false and misleading statements regarding FARO's business prospects during the Class Period. The Defendants deny the allegations in the lawsuit. The Settlement provides a substantial recovery now and avoids the costs and risks associated with continued litigation, including the danger of no recovery for the Class.

**If the Case Had Not Settled:** Continuing with the case could have resulted in dismissal or loss at trial. The parties do not agree on the amount of money that could have been obtained if the Class prevailed at trial. Lead Plaintiff and Defendants disagree about: (1) the method for determining whether FARO's securities were artificially inflated during the relevant period; (2) the amount of any such inflation; (3) the extent that various alleged conduct was materially false or misleading; (4) the extent that various alleged conduct influenced the trading price of FARO securities during the relevant period; and (5) whether the misrepresentations and omissions alleged were material, false, misleading, or otherwise actionable under the securities laws.

**Attorneys' Fees and Expenses:** Court-appointed Plaintiffs' Co-Lead Counsel have not received any payment for their work investigating the facts, conducting this Litigation and negotiating the Settlement on behalf of the Class. Plaintiffs' Co-Lead Counsel will ask the Court for attorneys' fees of 30% of the Settlement Fund and for reimbursement of out-of-pocket expenses not to exceed $200,000 to be paid from the Settlement Fund, plus interest. Over the past several years, Plaintiffs' Co-Lead Counsel have expended considerable time and effort in the prosecution of this litigation on a contingent fee basis and advanced the expenses of the litigation in the expectation that, if they were successful in obtaining a recovery for the Class, they would be paid from such recovery. In this type of litigation it is customary for counsel to be awarded a percentage of the common fund recovery as their attorneys' fees. The requested fees and maximum costs to be sought amount to an average of approximately $0.166 per damaged share.

**Court Hearing on Fairness of Settlement:** October 3, 2008, at 9:00 a.m. The purpose of the hearing will be to determine: (1) whether the Settlement is fair, reasonable and adequate to Members of the Class, (2) whether the proposed plan to distribute the Settlement proceeds is fair, reasonable and adequate, and (3) whether the application by Plaintiffs' Co-Lead Counsel and Lead Plaintiff for an award of attorneys' fees and expenses should be approved.

---

[1]This estimate solely reflects average recovery per alleged damaged share of FARO Technologies, Inc. ("FARO") common stock. Actual recovery per share will reflect adjustment for any non-common stock securities that are subject to this Settlement.

**Contact the Parties Below to Obtain More Information About the Settlement:**

| Claims Administrator: | Plaintiff's Co-Lead Counsel: |
|---|---|
| *FARO Shareholder Litigation* <br> Claims Administrator <br> c/o Strategic Claims Services <br> 600 N Jackson Street, Suite 3 <br> Media, PA 19063 <br> Tel: 866-274-4004 <br> Fax: 610-565-7985 | Scott R. Shepherd <br> Shepherd, Finkelman, Miller & Shah, LLP <br> 1640 Town Center Circle <br> Weston, FL 33326 <br> Tel: 954-943-9191 <br> Fax: 954-943-9173 |

- Your legal rights are affected whether you act or don't act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to get a payment. The deadline for submitting a claim is October 30, 2008. |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to participate in another lawsuit against the Defendants relating to the legal claims in this lawsuit. The deadline for requesting exclusion is September 12, 2008. |
| OBJECT | You may write to the Court if you don't like this Settlement. The deadline for objection is September 12, 2008. |
| GO TO A HEARING | You may ask to speak in Court about the fairness of the Settlement. |
| DO NOTHING | Get no payment. |

- These rights and options are explained in this Notice.
- The Court in charge of this case must decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and, if there are any appeals, after appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

   Page

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
  1.  Why Did I Get This Notice Package? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2.  What Is This Lawsuit About? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  3.  Why Is This A Class Action? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  4.  Why Is There A Settlement?

**WHO IS IN THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
  5.  How Do I Know If I Am Part Of The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  6.  What Are The Exceptions To Being Included? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  7.  I'm Still Not Sure If I Am Included. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**THE SETTLEMENT BENEFITS—WHAT YOU GET** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
  8.  What Does The Settlement Provide? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  9.  How Much Will My Payment Be? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM** . . . . . . . . . . . . . . . . . . . . . . **4**
 10.  Assuming the Settlement Is Approved, How Will I Get A Payment? . . . . . . . . . . . . . . . . . . . 4
 11.  Assuming The Settlement Is Approved, When Will I Get My Payment? . . . . . . . . . . . . . . . . . . 5
 12.  What Am I Giving Up To Get A Payment Or Stay In The Case? . . . . . . . . . . . . . . . . . . . . . . 5

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
 13.  How Do I Get Out Of The Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 14.  If I Do Not Exclude Myself, Can I Sue The Defendants For The Same Thing Later? . . . . . . . . . . 5
 15.  If I Exclude Myself, Can I Get Money From This Settlement? . . . . . . . . . . . . . . . . . . . . . . . 5

THE LAWYERS REPRESENTING YOU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
16.  Do I Have A Lawyer In This Case? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5
17.  How Will The Lawyers Be Paid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

OBJECTION TO THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
18.  How Do I Tell The Court That I Don't Like The Settlement, The Fee And Expense Request And/Or
     The Plan Of Allocation? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
19.  What's The Difference Between Objecting And Excluding? . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

THE COURT'S FAIRNESS HEARING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
20.  When And Where Will The Court Decide Whether To Approve The Settlement? . . . . . . . . . . . . . . .   6
21.  Do I Have To Come To The Hearing? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
22.  May I Speak At The Hearing? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

IF YOU DO NOTHING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
23.  What Happens If I Do Nothing At All? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

GETTING MORE INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
24.  Are There More Details About The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
25.  How Do I Get More Information? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

SPECIAL NOTICES TO NOMINEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

## BASIC INFORMATION

### 1.  Why Did I Get This Notice Package?

You or someone in your family may have purchased or otherwise acquired FARO securities between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive.

You received this Notice because you have the right to know about the proposed Settlement of a consolidated securities class action lawsuit, and about all of your options, before the Court decides whether to approve the Settlement. If the Court approves the Settlement and after any objections or appeals are resolved, the Claims Administrator appointed by the Court will make the payments that the Settlement allows.

This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Middle District of Florida, Orlando Division, and the case is known as *In re FARO Technologies Securities Litigation*, Case No. 6:05-cv-1810-Orl-22DAB. The Party that sued is called the Lead Plaintiff, and the company and the individuals being sued, FARO, Simon Raab, Gregory Fraser and Barbara Smith, are called the Defendants.

### 2.  What Is This Lawsuit About?

This case was brought as a securities class action alleging that the Defendants falsely represented FARO's financial results by misrepresenting certain information regarding FARO's financial performance and systems of internal controls. Lead Plaintiff asserts that these actions resulted in the artificial inflation of the price of FARO's securities between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive.

### 3.  Why Is This A Class Action?

In a class action, one or more people called class representatives sue on behalf of people who have similar claims. In this instance, the Court-appointed Lead Plaintiff, Kornitzer Capital Management, Inc., represents the Class. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class. The Honorable Anne C. Conway is the Judge in charge of this class action.

### 4.  Why Is There A Settlement?

The Court did not decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and eligible Class Members who make a valid claim will get compensation. The Lead Plaintiff and its attorneys think the Settlement is a very good result for all Class Members. Defendants deny liability and deny that Lead Plaintiff and Members of the Class suffered any damage. Further, assuming Lead Plaintiff prevailed at trial, any favorable verdict would have likely been the subject of appeal and the Class recovery would have remained uncertain and further delayed.

## WHO IS IN THE SETTLEMENT

To see if you will get money from this Settlement, you first have to determine if you are a Class Member.

**5.  How Do I Know If I Am Part Of The Settlement?**

The Class includes all Persons who purchased or otherwise acquired FARO securities between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive.

**6.  What Are The Exceptions To Being Included?**

You are not a Class Member if you are a Defendant, a member of the immediate family of one of the Individual Defendants listed in question 1, an entity in which any Defendant has a controlling interest and the legal representatives, heirs, successors, predecessors in interest or assigns of any excluded party, or the Judge(s) assigned to this case.

**7.  I'm Still Not Sure If I Am Included.**

If you are still not sure whether you are included, you can ask for free help. You can call Strategic Claims Services at 866-274-4004 for more information, or you can fill out and return the Proof of Claim form described in question 10 to see if you qualify.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**8.  What Does The Settlement Provide?**

Defendants have agreed to pay $6.875 million in cash (funded by FARO's Insurer) to be divided among eligible Class Members who send in valid Proof of Claim forms, after payment of Court-approved attorneys' fees and expenses, reimbursement of expenses of Lead Plaintiff and the costs of claims administration, including the costs of printing and mailing this Notice and the cost of publishing newspaper notice (the "Net Settlement Fund").

**9.  How Much Will My Payment Be?**

Your share of the Net Settlement Fund will depend on the number of valid Proof of Claim forms that Class Members send in and how many shares of FARO common stock or other publicly-traded securities you purchased or otherwise acquired during the relevant period and when you bought and sold them. Your actual recovery per share will depend upon the total number of securities participating in the Settlement. The date of purchase or sale of a security is the "contract" or "trade" date, and not the "settlement" date.

For Class Members who held FARO securities at the beginning of the Class Period or purchased, otherwise acquired or sold FARO securities on multiple occasions during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases, acquisitions and sales for purposes of calculating a claim. Under the FIFO method, purchases, acquisitions or sales of securities during the Class Period will be matched, in chronological order, first against securities held at the beginning of the Class Period. The remaining purchases, acquisitions or sales of securities during the Class Period will then be matched, in chronological order, against securities purchased, otherwise acquired or sold during the Class Period.

A Class Member will be eligible to receive a distribution from the Net Settlement Fund only if a Class Member had a net trading loss (i.e., after all profits from transactions in FARO securities during the Class Period are subtracted from all losses).

The payment you get will reflect your pro rata share of the Net Settlement Fund. Depending on the number of securities that participate in the Settlement and when those securities were purchased or otherwise acquired and sold, the estimated average payment for Class Members will be approximately $0.505 for each share of common stock before deduction of Court-approved fees and expenses. As detailed in the attached Plan of Allocation, damages for call options or put options will be calculated using the Black-Scholes option pricing formula (using the implied volatility for an at-the-money call or put option on that day and one year risk-free U.S. Treasury rate). The number of claimants who send in Proof of Claim forms varies widely from case to case. If fewer than anticipated Class Members send in a Proof of Claim form, you could get more money.

## HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM

**10.  Assuming the Settlement Is Approved, How Will I Get A Payment?**

To qualify for payment, you must be an eligible Class Member and you must send in a completed Proof of Claim form. A Proof of Claim form is enclosed with this Notice. Read the instructions carefully, fill out the form, include all the documents the form asks for, sign it, and mail it postmarked no later than October 30, 2008.

## 11.   Assuming The Settlement Is Approved, When Will I Get My Payment?

The Court will hold a hearing on October 3, 2008, at 9:00 a.m., to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain how these appeals are resolved, and resolving them can take time, perhaps several years. Please be patient.

## 12.   What Am I Giving Up To Get A Payment Or Stay In The Case?

Unless you exclude yourself, you are staying in the Class and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Defendants about the same legal issues that were or could have been raised in this case. It also means that all of the Court's orders will apply to you and legally bind you and you will release your claims in this case against the Defendants. The terms of the release are included in the Proof of Claim form that is enclosed.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this Settlement, but you want to keep the right to sue or continue to sue the Defendants on your own about the same legal issues that were or could have been raised in this case, then you must take steps to get out of the Class. This is called excluding yourself, or is sometimes referred to as "opting out" of the Class.

## 13.   How Do I Get Out Of The Class?

To exclude yourself from the Class, you must send a letter by mail stating that you want to be excluded from the class in *In re FARO Technologies Securities Litigation,* Case No. 6:05-cv-1810-Orl-22DAB. You must include your name, address, telephone number, and signature, and the number of shares of FARO common stock and/or the number of other publicly-traded FARO securities you purchased or otherwise acquired between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive, the number of securities sold during this time period, if any, and for each purchase, acquisition or sale, the date of such purchase, acquisition or sale, the number of shares, options or other securities purchased, acquired or sold, and the price paid or received per share, option or other security for each purchase, acquisition or sale. You must mail your exclusion request and have it post-marked no later than September 12, 2008 to:

> *FARO Shareholder Litigation*
> Claims Administrator
> c/o Strategic Claims Services
> 600 North Jackson Street, Suite 3
> Media, PA 19063

You cannot exclude yourself by telephone or e-mail. If you ask to be excluded, you are not eligible to get any settlement payment, you cannot object to the Settlement, and you will not be legally bound by anything that happens in this lawsuit.

## 14.   If I Do Not Exclude Myself, Can I Sue The Defendants For The Same Thing Later?

No. Unless you exclude yourself, you give up any right to sue the Defendants for the legal issues that were or could have been raised in this Litigation. If you have a pending lawsuit against any of the Defendants, speak to your lawyer in that case immediately. Remember, the exclusion deadline is September 12, 2008.

## 15.   If I Exclude Myself, Can I Get Money From This Settlement?

No. If you exclude yourself, do not send in a Proof of Claim form. But, you may sue, continue to sue, or be part of a different lawsuit against the Defendants.

### THE LAWYERS REPRESENTING YOU

## 16.   Do I Have A Lawyer In This Case?

The Court appointed the law firms of Shepherd, Finkelman Miller & Shah, LLP and The Edgar Law Firm, LLC to represent all Members of the Class.

These lawyers are called Plaintiffs' Co-Lead Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 17.   How Will The Lawyers Be Paid?

Plaintiffs' Co-Lead Counsel will ask the Court for attorneys' fees of 30% of the Settlement Fund (an average of $0.151 per damaged share of common stock) and for reimbursement of out-of-pocket expenses up to $200,000

(less than $0.015 per damaged share of common stock), which were advanced in connection with the Litigation, plus interest on such amounts. Such sums, as may be approved by the Court, will be paid from the Settlement Fund. Class Members are not personally liable for any such fees and expenses.

The attorneys' fees and expenses requested will be the only payment to Plaintiffs' Co-Lead Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis. To date, Plaintiffs' Co-Lead Counsel have not been paid for their services for conducting this Litigation on behalf of the Lead Plaintiff and the Class nor for their substantial out-of-pocket expenses. The fee requested will compensate Plaintiffs' Co-Lead Counsel for their work in achieving the Settlement and is within the range of fees awarded to class counsel under similar circumstances in other cases of this type. The Court may award less than this amount.

## OBJECTION TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it, with Plaintiffs' Co-Lead Counsel's request for attorneys' fees and reimbursement of expenses, and/or with the Plan of Allocation.

**18.  How Do I Tell The Court That I Don't Like The Settlement, The Fee And Expense Request And/Or The Plan Of Allocation?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To make an objection, you must send a letter saying that you object to the Settlement, the request for attorneys' fees and expenses, and/or the Plan of Allocation in *In re FARO Technologies Securities Litigation,* Case No. 6:05-cv-1810-Orl-22DAB. Be sure to include your name, address, telephone number, signature, and the reasons you object to the Settlement, as well as the number of shares of FARO common stock and/or the number of other publicly-traded FARO securities you purchased, acquired and/or sold between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive. Any objection to the Settlement must be mailed or delivered to the following attorneys, and filed with the Clerk by no later than September 12, 2008.

| Court: | Co-Lead Counsel for Plaintiffs: | Counsel for the Defendants: |
|---|---|---|
| CLERK OF THE COURT UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION 401 West Central Boulevard Suite 1200 Orlando, FL 32801-0120 | Scott R. Shepherd Shepherd, Finkelman, Miller & Shah, LLP 1640 Town Center Circle Suite 216 Weston, FL 33326 Tel: (954) 943-9191 Fax: (954) 943-9173 | Jay B. Kasner Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036 Tel: (212) 735-3000 Fax: (212) 735-2000 |

**19.  What's The Difference Between Objecting And Excluding?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object *only if* you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

**20.  When And Where Will The Court Decide Whether To Approve The Settlement?**

The Court will hold a fairness hearing at 9:00 a.m., on October 3, 2008, at the United States District Court for the Middle District of Florida, 401 West Central Boulevard, Suite 1200, Orlando, Florida. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court will also consider how much to pay Plaintiffs' Co-Lead Counsel. The Court may decide these issues at the hearing or take them under consideration. We do not know how long these decisions will take.

**21.  Do I Have To Come To The Hearing?**

No. Plaintiffs' Co-Lead Counsel will answer questions from the Court, but you are welcome to attend at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you delivered your

written objection on time, as described in question 18 above, the Court will consider it. You may also pay your own lawyer to attend, but your lawyer's attendance is not necessary.

## 22. May I Speak At The Hearing?

You may ask the Court for permission to speak at the fairness hearing. To do so, you must send a letter stating that it is your intention to appear in *In re FARO Technologies Securities Litigation,* Case No. 6:05-cv-1810-Orl-22DAB. Be sure to include your name, address, telephone number and signature. You must include the number of FARO securities you purchased or otherwise acquired and sold between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive. Your notice of intention to appear must be mailed or delivered no later than September 12, 2008, to the Clerk of the Court, Plaintiffs' Co-Lead Counsel, and the Defendants' Counsel, at the three addresses listed in question 18. You cannot speak at the hearing if you exclude yourself from the Class.

## IF YOU DO NOTHING

## 23. What Happens If I Do Nothing At All?

If you do nothing, you'll get no money from this Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the same legal issues that were or could have been raised in this Litigation.

## GETTING MORE INFORMATION

## 24. Are There More Details About The Settlement?

This Notice summarizes the proposed Settlement. More details are in the Stipulation of Settlement dated as of April 9, 2008. You can get a copy of the Stipulation of Settlement by writing to FARO Shareholder Litigation, Claims Administrator, c/o Strategic Claims Services, 600 North Jackson Street, Suite 3, Media, PA 19063 or from the Clerk's office at the United States District Court for the Middle District of Florida, 401 West Central Boulevard, Orlando, Florida during regular business hours or by visiting the following website: www.strategicclaims.net.

## 25. How Do I Get More Information?

You can call 866-274-4004 or write to FARO Shareholder Litigation, c/o Strategic Claims Services at 600 North Jackson Street, Suite 3, Media, PA 19063 or e-mail to info@strategicclaims.net, or visit the website at www.strategicclaims.net.

**DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE.**

### SPECIAL NOTICES TO NOMINEES

If you hold any FARO securities purchased or otherwise acquired between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive, as nominee for a beneficial owner, then, within ten (10) days after you receive this Notice, you must either: (1) send a copy of this notice by first class mail to all such owners; or (2) provide a list of the names and addresses of such persons to the Claims Administrator at the following address:

*FARO Shareholder Litigation*
Claims Administrator
c/o Strategic Claims Services
600 North Jackson Street, Suite 3
Media, PA 19063

If you choose to mail the Notice and Proof of Claim yourself, you may obtain from the Claims Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for or advancement of reasonable administrative costs actually incurred or expected to be incurred in connection with forwarding the Notice and which would not have been incurred but for the obligation to forward the Notice upon submission of appropriate documentation to the Claims Administrator.

DATED: July 2, 2008

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

7

[THIS PAGE INTENTIONALLY LEFT BLANK]

# EXHIBIT A

**Plan of Allocation Section for FARO Technologies, Inc. Securities Litigation**

The following plan of allocation was developed based on event study analyses adjusted to reflect the outcome of discovery and the terms of the Settlement. It is estimated that a total of 13.6 million shares allegedly have been damaged as a result of the claims set forth in Plaintiff's Consolidated Second Amended Class Action Complaint. Given the gross settlement amount of $6.875 million, the expected average recovery per damaged share will be approximately $0.505, if all purchasers file claims pursuant to this notice.

**Damages for Rule 10b-5 Claims for Common Shares**

Rule 10b-5 claims shall be available for all persons that purchased FARO Technologies, Inc. common shares in the open market after the close of trading on April 15, 2004[2], and on or before March 15, 2006, and sold their shares on or after November 4, 2005, or have continued to hold their shares. Damages per share shall be determined based on the inflation in the share price at the date of purchase minus the inflation in share price at the date of sale. Inflation in the share price shall be determined by the price paid or received in each transaction multiplied times the inflation percentage applicable to the transaction date as set forth in Table 1. Table 1 is adjusted to reflect that portion of the declines in the share price of FARO Technologies, Inc. that can be explained by identified events that allegedly revealed corrective information as determined by an event study by Plaintiff's damages expert and as a result of deliberations of Lead Plaintiff and Lead Plaintiff's' Counsel.

**Table 1: Inflation as a Percentage of the Share Price During the Rule 10b-5 Class Period**

| Period | Start Date | End Date | Inflation Percentage | Period | Start Date | End Date | Inflation Percentage |
|--------|-----------|----------|---------------------|--------|-----------|----------|---------------------|
| 1 | 4/16/04 | 5/6/04 | 15.69% | 6 | 11/7/05 | 1/19/06 | 15.38% |
| 2 | 5/7/04 | 7/15/04 | 20.87% | 7 | 1/20/06 | 2/23/06 | 9.17% |
| 3 | 7/16/04 | 10/14/04 | 23.50% | 8 | 2/24/06 | 3/15/06 | 7.83% |
| 4 | 10/15/04 | 11/3/05 | 25.85% | 9 | 3/16/06 | Current | 0.00% |
| 5 | 11/4/05 | 11/6/05 | 17.30% | | | | |

Damages per share shall be further limited by the following limitations: (i) if a share was sold prior to June 13, 2006, damages per share shall not exceed the difference between the purchase price and the selling price; (ii) if a share was sold on or between March 16, 2006 and June 13, 2006, then damages per share shall not exceed the purchase price minus the average closing price on the date of sale as set forth in Table 2; and (iii) if a share was not sold before June 13, 2006, then damages per share shall not exceed the purchase price per share minus $14.88.

Any trading activity during the Class Period resulting in trading profits will be netted against trading losses to determine net trading losses, if any.

**Table 2: Average Closing Prices for the 90 Days After the Class Period**

| Sale Date | Closing Price | Average Closing Price From 3/16/06 | Sale Date | Closing Price | Average Closing Price From 3/16/06 |
|-----------|---------------|-----------------------------------|-----------|---------------|-----------------------------------|
| 3/16/2006 | 13.37 | 13.37 | 3/29/2006 | 14.10 | 13.95 |
| 3/17/2006 | 13.44 | 13.41 | 3/30/2006 | 14.03 | 13.96 |
| 3/20/2006 | 13.92 | 13.58 | 3/31/2006 | 14.25 | 13.98 |
| 3/21/2006 | 13.88 | 13.65 | 4/3/2006 | 13.90 | 13.98 |
| 3/22/2006 | 14.15 | 13.75 | 4/4/2006 | 13.85 | 13.97 |
| 3/23/2006 | 14.35 | 13.85 | 4/5/2006 | 13.84 | 13.96 |
| 3/24/2006 | 14.40 | 13.93 | 4/6/2006 | 13.82 | 13.95 |
| 3/27/2006 | 13.95 | 13.93 | 4/7/2006 | 13.87 | 13.95 |
| 3/28/2006 | 13.96 | 13.94 | 4/10/2006 | 13.77 | 13.94 |

---

[2] The Company issued a press release for first quarter 2004 earnings after the close of trading on April 15, 2004 at 5 pm (Eastern). Therefore, shares purchased on April 15, 2004 prior to the issuance of this press release are not considered eligible purchases. Shares purchased after the issuance of this press release on April 15, 2004, however, are considered eligible purchases and shall be deemed to have occurred on April 16, 2004 for purposes of calculating the inflation in any such share of common stock and to calculate the damages, if any, that are recoverable. The same methodology shall be applied with respect to the purchase or sale of any options on April 15, 2004.

| Sale Date | Closing Price | Average Closing Price From 3/16/06 |
|---|---|---|
| 4/11/2006 | 13.63 | 13.92 |
| 4/12/2006 | 13.80 | 13.91 |
| 4/13/2006 | 14.06 | 13.92 |
| 4/17/2006 | 13.98 | 13.92 |
| 4/18/2006 | 14.19 | 13.94 |
| 4/19/2006 | 14.57 | 13.96 |
| 4/20/2006 | 14.85 | 14.00 |
| 4/21/2006 | 15.05 | 14.04 |
| 4/24/2006 | 15.16 | 14.08 |
| 4/25/2006 | 15.26 | 14.12 |
| 4/26/2006 | 15.80 | 14.18 |
| 4/27/2006 | 15.54 | 14.22 |
| 4/28/2006 | 15.19 | 14.26 |
| 5/1/2006 | 15.14 | 14.28 |
| 5/2/2006 | 16.08 | 14.34 |
| 5/3/2006 | 16.03 | 14.39 |
| 5/4/2006 | 16.12 | 14.44 |
| 5/5/2006 | 16.48 | 14.49 |
| 5/8/2006 | 17.00 | 14.56 |
| 5/9/2006 | 16.73 | 14.62 |
| 5/10/2006 | 16.78 | 14.67 |
| 5/11/2006 | 16.26 | 14.71 |

| Sale Date | Closing Price | Average Closing Price From 3/16/06 |
|---|---|---|
| 5/12/2006 | 16.37 | 14.75 |
| 5/15/2006 | 16.16 | 14.79 |
| 5/16/2006 | 16.54 | 14.83 |
| 5/17/2006 | 16.49 | 14.87 |
| 5/18/2006 | 16.25 | 14.90 |
| 5/19/2006 | 16.29 | 14.93 |
| 5/22/2006 | 16.09 | 14.95 |
| 5/23/2006 | 15.81 | 14.97 |
| 5/24/2006 | 15.45 | 14.98 |
| 5/25/2006 | 15.60 | 14.99 |
| 5/26/2006 | 15.46 | 15.00 |
| 5/30/2006 | 15.10 | 15.00 |
| 5/31/2006 | 15.03 | 15.00 |
| 6/1/2006 | 15.28 | 15.01 |
| 6/2/2006 | 15.05 | 15.01 |
| 6/5/2006 | 14.67 | 15.00 |
| 6/6/2006 | 14.30 | 14.99 |
| 6/7/2006 | 14.13 | 14.98 |
| 6/8/2006 | 13.78 | 14.96 |
| 6/9/2006 | 13.62 | 14.93 |
| 6/12/2006 | 13.21 | 14.91 |
| 6/13/2006 | 13.57 | 14.88 |

**Damages for Rule 10b-5 Claims for Options**

Rule 10b-5 claims shall be available for all persons that purchased call options on FARO Technologies, Inc. common shares in the open market on or after April 16, 2004, and on or before March 15, 2006, and did not sell, exercise or have their call options expire until on or after November 4, 2005. For each call option, the percentage inflation at the time of purchase, sale, exercise or expiration shall be determined based on the percentage difference between the Black-Scholes predicted option price for FARO Technologies, Inc. common shares at the closing price on each applicable date (Table 3) as compared with the Black-Scholes predicted option price for FARO Technologies, Inc. common shares based on the "true value" of the shares as determined by the closing price reduced by the percentage inflation set forth in Table 3. For each Black-Scholes calculation, the term of the option shall be as stated for the option and the exercise or strike price shall be as stated for the option, the implied volatility for the date of purchase shall be set for the applicable date in Table 3 and the risk-free interest rates shall be the US Treasury rate for a one-year composite US government security for the applicable date in Table 3. Damages for each call option purchase shall be the inflation in the purchase price (purchase price paid for the call option times the percentage inflation on the date of purchase) minus the inflation received or realized upon sale, exercise or expiration (as determined by the sale, exercise or expiration proceeds received or realized times the percentage inflation on the applicable date).

Rule 10b-5 claims shall be available for all persons that sold (wrote) put options on FARO Technologies, Inc. common shares in the open market on or after April 16, 2004, and on or before March 15, 2006, and did not repurchase, experience an exercise, or have the put options expire until on or after November 4, 2005. For each put option, the amount of inflation at the time of purchase, sale, exercise or expiration shall be determined based on the difference between the Black-Scholes predicted option price for FARO Technologies, Inc. common shares based on the "true value" of the shares as determined by the closing price reduced by the percentage inflation set forth in Table 3 minus the Black-Scholes predicted option price for FARO Technologies, Inc. common shares at the closing price on each applicable date in Table 3. For each Black-Scholes calculation, the term and exercise (or strike) price of the option shall be as stated for the option, the implied volatility for the date of purchase shall be set for the applicable date in Table 3 below and the risk-free interest rates shall be the US Treasury rate for a one-year composite US government security for the applicable date in Table 3 below. Damages for each put option purchase shall be the amount of inflation in the selling price minus the amount of inflation received or realized upon repurchase, exercise or expiration on the applicable date.

**Table 3: Share Price, Volatility and Interest Rates for Option Pricing**

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) | Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|---|---|---|---|---|
| 4/16/2004 | 22.44 | 18.92 | 70.96 | 1.40 | 6/28/2004 | 25.36 | 20.07 | 62.41 | 2.30 |
| 4/19/2004 | 22.02 | 18.57 | 64.00 | 1.43 | 6/29/2004 | 25.68 | 20.32 | 59.06 | 2.20 |
| 4/20/2004 | 21.95 | 18.51 | 62.80 | 1.46 | 6/30/2004 | 25.67 | 20.31 | 58.03 | 2.09 |
| 4/21/2004 | 22.25 | 18.76 | 62.14 | 1.52 | 7/1/2004 | 24.35 | 19.27 | 59.37 | 2.07 |
| 4/22/2004 | 22.21 | 18.73 | 63.45 | 1.49 | 7/2/2004 | 24.13 | 19.09 | 59.43 | 2.02 |
| 4/23/2004 | 22.16 | 18.68 | 61.89 | 1.59 | 7/6/2004 | 23.27 | 18.41 | 61.94 | 2.15 |
| 4/26/2004 | 21.50 | 18.13 | 70.74 | 1.57 | 7/7/2004 | 22.84 | 18.07 | 62.68 | 2.00 |
| 4/27/2004 | 20.30 | 17.11 | 73.49 | 1.53 | 7/8/2004 | 21.82 | 17.27 | 65.74 | 1.99 |
| 4/28/2004 | 19.83 | 16.72 | 73.12 | 1.54 | 7/9/2004 | 22.40 | 17.72 | 62.46 | 2.00 |
| 4/29/2004 | 18.82 | 15.87 | 74.45 | 1.55 | 7/12/2004 | 22.01 | 17.42 | 65.15 | 2.02 |
| 4/30/2004 | 17.78 | 14.99 | 75.09 | 1.55 | 7/13/2004 | 22.06 | 17.45 | 63.70 | 2.05 |
| 5/3/2004 | 17.63 | 14.86 | 77.63 | 1.60 | 7/14/2004 | 21.80 | 17.25 | 64.36 | 2.08 |
| 5/4/2004 | 18.35 | 15.47 | 78.19 | 1.57 | 7/15/2004 | 21.81 | 17.26 | 65.88 | 2.11 |
| 5/5/2004 | 19.23 | 16.21 | 77.63 | 1.56 | 7/16/2004 | 24.60 | 18.82 | 58.17 | 2.08 |
| 5/6/2004 | 18.31 | 15.44 | 80.00 | 1.61 | 7/19/2004 | 23.96 | 18.33 | 60.58 | 2.10 |
| 5/7/2004 | 23.00 | 18.20 | 71.05 | 1.83 | 7/20/2004 | 24.37 | 18.64 | 60.49 | 2.13 |
| 5/10/2004 | 23.30 | 18.44 | 70.83 | 1.85 | 7/21/2004 | 23.25 | 17.79 | 61.90 | 2.14 |
| 5/11/2004 | 23.95 | 18.95 | 66.83 | 1.83 | 7/22/2004 | 23.22 | 17.76 | 60.99 | 2.12 |
| 5/12/2004 | 23.48 | 18.58 | 69.75 | 1.81 | 7/23/2004 | 22.58 | 17.27 | 63.25 | 2.12 |
| 5/13/2004 | 23.30 | 18.44 | 69.60 | 1.84 | 7/26/2004 | 22.25 | 17.02 | 66.97 | 2.18 |
| 5/14/2004 | 23.41 | 18.52 | 70.42 | 1.81 | 7/27/2004 | 22.44 | 17.17 | 64.34 | 2.19 |
| 5/17/2004 | 22.99 | 18.19 | 68.58 | 1.80 | 7/28/2004 | 22.27 | 17.04 | 66.42 | 2.17 |
| 5/18/2004 | 22.94 | 18.15 | 69.34 | 1.83 | 7/29/2004 | 23.36 | 17.87 | 66.49 | 2.15 |
| 5/19/2004 | 23.49 | 18.59 | 72.30 | 1.85 | 7/30/2004 | 23.53 | 18.00 | 65.90 | 2.13 |
| 5/20/2004 | 24.29 | 19.22 | 68.05 | 1.81 | 8/2/2004 | 23.69 | 18.12 | 66.53 | 2.12 |
| 5/21/2004 | 25.75 | 20.37 | 65.05 | 1.84 | 8/3/2004 | 22.96 | 17.57 | 67.67 | 2.11 |
| 5/24/2004 | 26.28 | 20.79 | 67.45 | 1.86 | 8/4/2004 | 22.45 | 17.18 | 65.96 | 2.11 |
| 5/25/2004 | 26.58 | 21.03 | 68.10 | 1.84 | 8/5/2004 | 21.02 | 16.08 | 69.14 | 2.09 |
| 5/26/2004 | 26.48 | 20.95 | 67.67 | 1.81 | 8/6/2004 | 19.48 | 14.90 | 71.57 | 1.91 |
| 5/27/2004 | 26.46 | 20.94 | 69.63 | 1.77 | 8/9/2004 | 19.31 | 14.77 | 70.77 | 1.97 |
| 5/28/2004 | 26.74 | 21.16 | 64.36 | 1.83 | 8/10/2004 | 19.97 | 15.28 | 69.55 | 2.01 |
| 6/1/2004 | 26.49 | 20.96 | 67.56 | 1.89 | 8/11/2004 | 19.60 | 14.99 | 71.91 | 2.00 |
| 6/2/2004 | 25.94 | 20.53 | 68.52 | 1.92 | 8/12/2004 | 19.18 | 14.67 | 70.51 | 1.99 |
| 6/3/2004 | 25.90 | 20.49 | 69.01 | 1.91 | 8/13/2004 | 18.62 | 14.25 | 71.94 | 1.97 |
| 6/4/2004 | 26.27 | 20.79 | 65.91 | 1.97 | 8/16/2004 | 19.49 | 14.91 | 67.69 | 2.01 |
| 6/7/2004 | 26.58 | 21.03 | 68.40 | 1.96 | 8/17/2004 | 20.15 | 15.42 | 71.83 | 1.98 |
| 6/8/2004 | 27.89 | 22.07 | 64.07 | 2.02 | 8/18/2004 | 21.40 | 16.37 | 64.06 | 1.97 |
| 6/9/2004 | 26.38 | 20.87 | 68.00 | 2.14 | 8/19/2004 | 20.86 | 15.96 | 66.90 | 1.96 |
| 6/10/2004 | 25.75 | 20.37 | 64.99 | 2.14 | 8/20/2004 | 20.94 | 16.02 | 68.75 | 1.98 |
| 6/14/2004 | 24.25 | 19.19 | 67.53 | 2.25 | 8/23/2004 | 20.87 | 15.97 | 68.13 | 2.03 |
| 6/15/2004 | 24.72 | 19.56 | 65.54 | 2.16 | 8/24/2004 | 20.45 | 15.65 | 66.71 | 2.03 |
| 6/16/2004 | 24.11 | 19.08 | 69.35 | 2.24 | 8/25/2004 | 20.92 | 16.00 | 64.37 | 2.03 |
| 6/17/2004 | 23.68 | 18.74 | 72.13 | 2.21 | 8/26/2004 | 20.86 | 15.96 | 61.08 | 2.02 |
| 6/18/2004 | 23.69 | 18.74 | 68.44 | 2.24 | 8/27/2004 | 21.53 | 16.47 | 60.49 | 2.03 |
| 6/21/2004 | 22.98 | 18.18 | 67.56 | 2.17 | 8/30/2004 | 20.56 | 15.73 | 64.48 | 2.04 |
| 6/22/2004 | 23.58 | 18.66 | 65.93 | 2.21 | 8/31/2004 | 20.57 | 15.74 | 63.34 | 1.99 |
| 6/23/2004 | 24.55 | 19.43 | 59.06 | 2.15 | 9/1/2004 | 20.75 | 15.87 | 64.76 | 1.99 |
| 6/24/2004 | 25.46 | 20.15 | 58.86 | 2.11 | 9/2/2004 | 20.56 | 15.73 | 65.02 | 2.02 |
| 6/25/2004 | 25.67 | 20.31 | 60.04 | 2.14 | 9/3/2004 | 20.21 | 15.46 | 63.25 | 2.12 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 9/7/2004 | 20.72 | 15.85 | 62.09 | 2.13 |
| 9/8/2004 | 20.63 | 15.78 | 62.50 | 2.09 |
| 9/9/2004 | 21.29 | 16.29 | 58.37 | 2.09 |
| 9/10/2004 | 21.41 | 16.38 | 59.92 | 2.08 |
| 9/13/2004 | 22.13 | 16.93 | 62.13 | 2.10 |
| 9/14/2004 | 21.97 | 16.81 | 61.45 | 2.08 |
| 9/15/2004 | 21.44 | 16.40 | 61.74 | 2.09 |
| 9/16/2004 | 21.88 | 16.74 | 60.05 | 2.06 |
| 9/17/2004 | 21.59 | 16.52 | 60.47 | 2.11 |
| 9/20/2004 | 21.85 | 16.72 | 59.91 | 2.10 |
| 9/21/2004 | 22.10 | 16.91 | 56.95 | 2.12 |
| 9/22/2004 | 21.97 | 16.81 | 58.02 | 2.12 |
| 9/23/2004 | 21.60 | 16.52 | 60.34 | 2.16 |
| 9/24/2004 | 21.38 | 16.36 | 60.20 | 2.20 |
| 9/27/2004 | 20.25 | 15.49 | 62.00 | 2.20 |
| 9/28/2004 | 19.99 | 15.29 | 63.95 | 2.18 |
| 9/29/2004 | 20.55 | 15.72 | 62.88 | 2.20 |
| 9/30/2004 | 20.34 | 15.56 | 62.44 | 2.21 |
| 10/1/2004 | 21.36 | 16.34 | 56.80 | 2.21 |
| 10/4/2004 | 21.76 | 16.65 | 58.90 | 2.25 |
| 10/5/2004 | 21.66 | 16.57 | 57.74 | 2.23 |
| 10/6/2004 | 21.69 | 16.59 | 57.11 | 2.26 |
| 10/7/2004 | 21.79 | 16.67 | 58.68 | 2.26 |
| 10/8/2004 | 21.47 | 16.43 | 58.32 | 2.21 |
| 10/11/2004 | 21.58 | 16.51 | 63.20 | 2.21 |
| 10/12/2004 | 21.25 | 16.26 | 62.07 | 2.20 |
| 10/13/2004 | 21.10 | 16.14 | 62.69 | 2.17 |
| 10/14/2004 | 20.55 | 15.72 | 65.18 | 2.15 |
| 10/15/2004 | 23.48 | 17.41 | 59.86 | 2.18 |
| 10/18/2004 | 23.43 | 17.37 | 57.92 | 2.21 |
| 10/19/2004 | 23.51 | 17.43 | 58.71 | 2.22 |
| 10/20/2004 | 23.82 | 17.66 | 51.74 | 2.20 |
| 10/21/2004 | 23.87 | 17.70 | 54.78 | 2.23 |
| 10/22/2004 | 23.75 | 17.61 | 54.79 | 2.23 |
| 10/25/2004 | 23.27 | 17.26 | 59.97 | 2.24 |
| 10/26/2004 | 23.50 | 17.43 | 60.63 | 2.24 |
| 10/27/2004 | 23.91 | 17.73 | 57.08 | 2.30 |
| 10/28/2004 | 24.62 | 18.26 | 54.22 | 2.29 |
| 10/29/2004 | 24.85 | 18.43 | 54.68 | 2.28 |
| 11/1/2004 | 24.73 | 18.34 | 57.85 | 2.34 |
| 11/2/2004 | 25.34 | 18.79 | 55.01 | 2.33 |
| 11/3/2004 | 25.05 | 18.58 | 56.68 | 2.32 |
| 11/4/2004 | 25.90 | 19.21 | 57.62 | 2.34 |
| 11/5/2004 | 24.86 | 18.43 | 54.28 | 2.44 |
| 11/8/2004 | 24.71 | 18.32 | 53.82 | 2.47 |
| 11/9/2004 | 24.45 | 18.13 | 55.57 | 2.46 |
| 11/10/2004 | 24.15 | 17.91 | 53.97 | 2.47 |
| 11/11/2004 | 24.16 | 17.92 | 54.00 | 2.48 |
| 11/12/2004 | 24.26 | 17.99 | 54.38 | 2.49 |
| 11/15/2004 | 24.48 | 18.15 | 54.77 | 2.53 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 11/16/2004 | 25.44 | 18.86 | 55.89 | 2.54 |
| 11/17/2004 | 25.97 | 19.26 | 53.84 | 2.50 |
| 11/18/2004 | 26.17 | 19.41 | 50.28 | 2.51 |
| 11/19/2004 | 25.17 | 18.66 | 55.48 | 2.56 |
| 11/22/2004 | 25.41 | 18.84 | 53.44 | 2.60 |
| 11/23/2004 | 26.35 | 19.54 | 52.51 | 2.60 |
| 11/24/2004 | 26.50 | 19.65 | 52.90 | 2.60 |
| 11/26/2004 | 26.35 | 19.54 | 52.44 | 2.61 |
| 11/29/2004 | 26.61 | 19.73 | 52.38 | 2.66 |
| 11/30/2004 | 27.20 | 20.17 | 51.71 | 2.63 |
| 12/1/2004 | 27.28 | 20.23 | 49.02 | 2.60 |
| 12/2/2004 | 27.25 | 20.21 | 50.16 | 2.62 |
| 12/3/2004 | 27.08 | 20.08 | 52.63 | 2.58 |
| 12/6/2004 | 26.89 | 19.94 | 52.79 | 2.60 |
| 12/7/2004 | 26.28 | 19.49 | 53.35 | 2.60 |
| 12/8/2004 | 26.45 | 19.61 | 51.10 | 2.59 |
| 12/9/2004 | 26.90 | 19.95 | 49.82 | 2.59 |
| 12/10/2004 | 28.90 | 21.43 | 46.45 | 2.61 |
| 12/13/2004 | 29.78 | 22.08 | 44.16 | 2.66 |
| 12/14/2004 | 29.64 | 21.98 | 47.59 | 2.65 |
| 12/15/2004 | 29.38 | 21.79 | 48.28 | 2.64 |
| 12/16/2004 | 29.63 | 21.97 | 47.94 | 2.66 |
| 12/17/2004 | 30.12 | 22.34 | 46.31 | 2.67 |
| 12/20/2004 | 30.38 | 22.53 | 50.83 | 2.72 |
| 12/21/2004 | 30.60 | 22.69 | 48.18 | 2.72 |
| 12/22/2004 | 31.11 | 23.07 | 47.32 | 2.71 |
| 12/23/2004 | 31.15 | 23.10 | 46.61 | 2.70 |
| 12/27/2004 | 31.35 | 23.25 | 47.31 | 2.78 |
| 12/28/2004 | 31.64 | 23.46 | 46.46 | 2.77 |
| 12/29/2004 | 31.85 | 23.62 | 47.46 | 2.77 |
| 12/30/2004 | 31.21 | 23.14 | 49.33 | 2.76 |
| 12/31/2004 | 31.18 | 23.12 | 46.47 | 2.75 |
| 1/3/2005 | 30.33 | 22.49 | 43.70 | 2.79 |
| 1/4/2005 | 29.33 | 21.75 | 44.85 | 2.82 |
| 1/5/2005 | 28.63 | 21.23 | 45.08 | 2.83 |
| 1/6/2005 | 29.57 | 21.93 | 44.91 | 2.82 |
| 1/7/2005 | 29.24 | 21.68 | 44.64 | 2.82 |
| 1/10/2005 | 29.10 | 21.58 | 45.28 | 2.86 |
| 1/11/2005 | 28.68 | 21.27 | 46.85 | 2.86 |
| 1/12/2005 | 28.70 | 21.28 | 46.36 | 2.84 |
| 1/13/2005 | 29.00 | 21.50 | 46.03 | 2.84 |
| 1/14/2005 | 29.55 | 21.91 | 45.90 | 2.87 |
| 1/18/2005 | 29.38 | 21.79 | 46.11 | 2.90 |
| 1/19/2005 | 29.71 | 22.03 | 44.06 | 2.88 |
| 1/20/2005 | 28.56 | 21.18 | 46.41 | 2.85 |
| 1/21/2005 | 28.30 | 20.99 | 45.08 | 2.83 |
| 1/24/2005 | 27.73 | 20.56 | 47.07 | 2.86 |
| 1/25/2005 | 27.71 | 20.55 | 45.94 | 2.88 |
| 1/26/2005 | 28.40 | 21.06 | 46.41 | 2.90 |
| 1/27/2005 | 28.53 | 21.16 | 46.71 | 2.91 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 1/28/2005 | 28.42 | 21.07 | 46.76 | 2.89 |
| 1/31/2005 | 28.84 | 21.39 | 46.23 | 2.96 |
| 2/1/2005 | 28.74 | 21.31 | 46.40 | 2.95 |
| 2/2/2005 | 28.85 | 21.39 | 46.43 | 2.95 |
| 2/3/2005 | 28.44 | 21.09 | 45.78 | 2.96 |
| 2/4/2005 | 29.20 | 21.65 | 43.28 | 2.93 |
| 2/7/2005 | 28.74 | 21.31 | 44.77 | 2.96 |
| 2/8/2005 | 29.46 | 21.85 | 43.37 | 2.97 |
| 2/9/2005 | 28.33 | 21.01 | 44.18 | 2.93 |
| 2/10/2005 | 28.06 | 20.81 | 44.96 | 2.96 |
| 2/11/2005 | 28.75 | 21.32 | 44.31 | 3.00 |
| 2/14/2005 | 28.49 | 21.13 | 45.19 | 3.03 |
| 2/15/2005 | 28.18 | 20.90 | 45.19 | 3.03 |
| 2/16/2005 | 28.17 | 20.89 | 44.58 | 3.05 |
| 2/17/2005 | 28.20 | 20.91 | 44.03 | 3.03 |
| 2/18/2005 | 27.52 | 20.41 | 46.32 | 3.09 |
| 2/22/2005 | 25.92 | 19.22 | 47.32 | 3.12 |
| 2/23/2005 | 26.10 | 19.35 | 46.38 | 3.12 |
| 2/24/2005 | 26.13 | 19.38 | 45.69 | 3.13 |
| 2/25/2005 | 26.39 | 19.57 | 44.68 | 3.15 |
| 2/28/2005 | 26.45 | 19.61 | 45.72 | 3.20 |
| 3/1/2005 | 26.40 | 19.58 | 45.09 | 3.20 |
| 3/2/2005 | 26.03 | 19.30 | 43.97 | 3.19 |
| 3/3/2005 | 26.02 | 19.29 | 43.74 | 3.19 |
| 3/4/2005 | 25.88 | 19.19 | 43.35 | 3.20 |
| 3/7/2005 | 25.49 | 18.90 | 42.68 | 3.22 |
| 3/8/2005 | 25.02 | 18.55 | 45.05 | 3.23 |
| 3/9/2005 | 24.44 | 18.12 | 52.00 | 3.24 |
| 3/10/2005 | 22.85 | 16.94 | 43.81 | 3.25 |
| 3/11/2005 | 23.87 | 17.70 | 44.12 | 3.28 |
| 3/14/2005 | 24.13 | 17.89 | 44.37 | 3.32 |
| 3/15/2005 | 24.34 | 18.05 | 43.60 | 3.32 |
| 3/16/2005 | 23.91 | 17.73 | 43.23 | 3.30 |
| 3/17/2005 | 23.31 | 17.29 | 44.25 | 3.29 |
| 3/18/2005 | 23.51 | 17.43 | 42.43 | 3.32 |
| 3/21/2005 | 23.36 | 17.32 | 42.84 | 3.33 |
| 3/22/2005 | 23.05 | 17.09 | 42.02 | 3.40 |
| 3/23/2005 | 22.90 | 16.98 | 43.09 | 3.38 |
| 3/24/2005 | 23.01 | 17.06 | 42.72 | 3.41 |
| 3/28/2005 | 23.02 | 17.07 | 43.13 | 3.43 |
| 3/29/2005 | 23.00 | 17.06 | 43.65 | 3.41 |
| 3/30/2005 | 23.00 | 17.06 | 42.89 | 3.39 |
| 3/31/2005 | 23.54 | 17.46 | 42.72 | 3.35 |
| 4/1/2005 | 24.07 | 17.85 | 40.48 | 3.34 |
| 4/4/2005 | 24.11 | 17.88 | 40.38 | 3.34 |
| 4/5/2005 | 24.58 | 18.20 | 39.72 | 3.34 |
| 4/6/2005 | 24.74 | 18.35 | 39.61 | 3.31 |
| 4/7/2005 | 25.00 | 18.54 | 39.55 | 3.32 |
| 4/8/2005 | 24.98 | 18.52 | 37.41 | 3.35 |
| 4/11/2005 | 24.84 | 18.42 | 38.48 | 3.37 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 4/12/2005 | 25.96 | 19.25 | 40.05 | 3.34 |
| 4/13/2005 | 28.92 | 21.45 | 40.25 | 3.32 |
| 4/14/2005 | 27.27 | 20.22 | 40.38 | 3.30 |
| 4/15/2005 | 27.82 | 20.63 | 39.37 | 3.26 |
| 4/18/2005 | 28.25 | 20.95 | 39.84 | 3.29 |
| 4/19/2005 | 28.40 | 21.06 | 38.26 | 3.26 |
| 4/20/2005 | 28.49 | 21.13 | 39.15 | 3.25 |
| 4/21/2005 | 28.43 | 21.08 | 38.50 | 3.31 |
| 4/22/2005 | 27.45 | 20.36 | 39.45 | 3.30 |
| 4/25/2005 | 27.89 | 20.68 | 40.48 | 3.34 |
| 4/26/2005 | 28.04 | 20.79 | 40.72 | 3.35 |
| 4/27/2005 | 27.40 | 20.32 | 40.68 | 3.33 |
| 4/28/2005 | 26.89 | 19.94 | 40.23 | 3.30 |
| 4/29/2005 | 26.85 | 19.91 | 40.58 | 3.33 |
| 5/2/2005 | 27.00 | 20.02 | 41.23 | 3.34 |
| 5/3/2005 | 26.70 | 19.80 | 41.31 | 3.35 |
| 5/4/2005 | 26.98 | 20.01 | 41.93 | 3.32 |
| 5/5/2005 | 27.76 | 20.59 | 41.39 | 3.29 |
| 5/6/2005 | 27.31 | 20.25 | 40.30 | 3.37 |
| 5/9/2005 | 28.51 | 21.14 | 44.03 | 3.40 |
| 5/10/2005 | 29.77 | 22.08 | 39.99 | 3.37 |
| 5/11/2005 | 30.31 | 22.48 | 39.90 | 3.35 |
| 5/12/2005 | 29.40 | 21.80 | 39.93 | 3.34 |
| 5/13/2005 | 27.69 | 20.53 | 42.63 | 3.29 |
| 5/16/2005 | 27.64 | 20.50 | 42.03 | 3.33 |
| 5/17/2005 | 27.83 | 20.64 | 43.95 | 3.32 |
| 5/18/2005 | 28.35 | 21.02 | 40.44 | 3.29 |
| 5/19/2005 | 28.42 | 21.07 | 40.29 | 3.31 |
| 5/20/2005 | 28.40 | 21.06 | 40.93 | 3.35 |
| 5/23/2005 | 28.71 | 21.29 | 41.39 | 3.35 |
| 5/24/2005 | 28.33 | 21.01 | 39.97 | 3.32 |
| 5/25/2005 | 27.64 | 20.50 | 40.32 | 3.32 |
| 5/26/2005 | 28.00 | 20.76 | 39.59 | 3.31 |
| 5/27/2005 | 28.20 | 20.91 | 39.38 | 3.31 |
| 5/31/2005 | 27.82 | 20.63 | 40.79 | 3.32 |
| 6/1/2005 | 27.69 | 20.53 | 40.94 | 3.25 |
| 6/2/2005 | 26.93 | 19.97 | 40.68 | 3.26 |
| 6/3/2005 | 27.45 | 20.36 | 39.55 | 3.28 |
| 6/6/2005 | 27.16 | 20.14 | 41.36 | 3.30 |
| 6/7/2005 | 26.78 | 19.86 | 41.20 | 3.28 |
| 6/8/2005 | 26.77 | 19.85 | 42.00 | 3.30 |
| 6/9/2005 | 26.49 | 19.64 | 41.18 | 3.31 |
| 6/10/2005 | 26.13 | 19.38 | 40.24 | 3.33 |
| 6/13/2005 | 25.56 | 18.95 | 43.07 | 3.38 |
| 6/14/2005 | 25.15 | 18.65 | 41.88 | 3.39 |
| 6/15/2005 | 25.22 | 18.70 | 40.82 | 3.39 |
| 6/16/2005 | 25.90 | 19.21 | 39.13 | 3.38 |
| 6/17/2005 | 26.25 | 19.47 | 41.37 | 3.39 |
| 6/20/2005 | 26.26 | 19.47 | 41.05 | 3.42 |
| 6/21/2005 | 26.30 | 19.50 | 40.22 | 3.42 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 6/22/2005 | 25.95 | 19.24 | 40.48 | 3.37 |
| 6/23/2005 | 26.00 | 19.28 | 40.00 | 3.39 |
| 6/24/2005 | 26.01 | 19.29 | 40.50 | 3.38 |
| 6/27/2005 | 26.07 | 19.33 | 41.22 | 3.42 |
| 6/28/2005 | 27.05 | 20.06 | 40.60 | 3.46 |
| 6/29/2005 | 27.06 | 20.07 | 40.36 | 3.44 |
| 6/30/2005 | 27.26 | 20.21 | 39.08 | 3.45 |
| 7/1/2005 | 26.80 | 19.87 | 39.48 | 3.51 |
| 7/5/2005 | 27.66 | 20.51 | 40.19 | 3.55 |
| 7/6/2005 | 28.11 | 20.84 | 39.11 | 3.53 |
| 7/7/2005 | 28.10 | 20.84 | 37.92 | 3.48 |
| 7/8/2005 | 28.34 | 21.02 | 38.41 | 3.52 |
| 7/11/2005 | 28.37 | 21.04 | 38.36 | 3.58 |
| 7/12/2005 | 28.02 | 20.78 | 39.78 | 3.59 |
| 7/13/2005 | 27.83 | 20.64 | 40.76 | 3.59 |
| 7/14/2005 | 27.80 | 20.61 | 38.53 | 3.60 |
| 7/15/2005 | 28.10 | 20.84 | 37.90 | 3.61 |
| 7/18/2005 | 27.71 | 20.55 | 40.39 | 3.66 |
| 7/19/2005 | 25.05 | 18.58 | 38.17 | 3.65 |
| 7/20/2005 | 23.48 | 17.41 | 42.50 | 3.66 |
| 7/21/2005 | 22.97 | 17.03 | 41.96 | 3.72 |
| 7/22/2005 | 23.67 | 17.55 | 36.99 | 3.72 |
| 7/25/2005 | 23.78 | 17.63 | 40.57 | 3.77 |
| 7/26/2005 | 23.70 | 17.57 | 41.13 | 3.76 |
| 7/27/2005 | 23.65 | 17.54 | 40.61 | 3.77 |
| 7/28/2005 | 23.73 | 17.60 | 39.59 | 3.75 |
| 7/29/2005 | 23.68 | 17.56 | 39.38 | 3.80 |
| 8/1/2005 | 23.90 | 17.72 | 40.49 | 3.83 |
| 8/2/2005 | 24.07 | 17.85 | 39.25 | 3.84 |
| 8/3/2005 | 23.83 | 17.67 | 39.92 | 3.82 |
| 8/4/2005 | 23.55 | 17.46 | 39.83 | 3.83 |
| 8/5/2005 | 23.26 | 17.25 | 42.30 | 3.87 |
| 8/8/2005 | 23.04 | 17.09 | 40.60 | 3.93 |
| 8/9/2005 | 21.44 | 15.90 | 42.77 | 3.90 |
| 8/10/2005 | 21.88 | 16.22 | 42.86 | 3.90 |
| 8/11/2005 | 21.79 | 16.16 | 42.13 | 3.89 |
| 8/12/2005 | 21.95 | 16.28 | 41.31 | 3.88 |
| 8/15/2005 | 22.46 | 16.66 | 41.43 | 3.91 |
| 8/16/2005 | 22.12 | 16.40 | 41.67 | 3.88 |
| 8/17/2005 | 22.26 | 16.51 | 41.16 | 3.89 |
| 8/18/2005 | 22.49 | 16.68 | 38.57 | 3.86 |
| 8/19/2005 | 22.14 | 16.42 | 42.45 | 3.89 |
| 8/22/2005 | 21.93 | 16.26 | 41.98 | 3.89 |
| 8/23/2005 | 21.78 | 16.15 | 42.36 | 3.88 |
| 8/24/2005 | 21.61 | 16.02 | 42.94 | 3.87 |
| 8/25/2005 | 21.19 | 15.71 | 41.34 | 3.87 |
| 8/26/2005 | 20.89 | 15.49 | 40.91 | 3.90 |
| 8/29/2005 | 20.54 | 15.23 | 42.97 | 3.91 |
| 8/30/2005 | 20.40 | 15.13 | 43.31 | 3.85 |
| 8/31/2005 | 20.66 | 15.32 | 42.82 | 3.77 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|
| 9/1/2005 | 20.68 | 15.34 | 42.92 | 3.66 |
| 9/2/2005 | 21.07 | 15.62 | 40.82 | 3.67 |
| 9/6/2005 | 21.65 | 16.05 | 42.73 | 3.73 |
| 9/7/2005 | 21.34 | 15.82 | 42.50 | 3.77 |
| 9/8/2005 | 21.27 | 15.77 | 43.00 | 3.77 |
| 9/9/2005 | 21.21 | 15.73 | 41.64 | 3.78 |
| 9/12/2005 | 20.86 | 15.47 | 43.25 | 3.83 |
| 9/13/2005 | 20.80 | 15.42 | 44.23 | 3.81 |
| 9/14/2005 | 20.70 | 15.35 | 42.63 | 3.81 |
| 9/15/2005 | 20.53 | 15.22 | 43.45 | 3.81 |
| 9/16/2005 | 20.55 | 15.24 | 40.37 | 3.86 |
| 9/19/2005 | 20.30 | 15.05 | 44.46 | 3.87 |
| 9/20/2005 | 20.22 | 14.99 | 44.03 | 3.92 |
| 9/21/2005 | 21.04 | 15.60 | 42.42 | 3.88 |
| 9/22/2005 | 20.22 | 14.99 | 44.63 | 3.86 |
| 9/23/2005 | 20.39 | 15.12 | 42.61 | 3.89 |
| 9/26/2005 | 19.94 | 14.79 | 43.33 | 3.95 |
| 9/27/2005 | 19.14 | 14.19 | 43.91 | 3.95 |
| 9/28/2005 | 19.37 | 14.36 | 43.52 | 3.95 |
| 9/29/2005 | 19.43 | 14.41 | 43.70 | 3.97 |
| 9/30/2005 | 19.49 | 14.45 | 43.57 | 4.01 |
| 10/3/2005 | 19.81 | 14.69 | 43.63 | 4.09 |
| 10/4/2005 | 20.26 | 15.02 | 43.30 | 4.09 |
| 10/5/2005 | 19.85 | 14.72 | 42.23 | 4.07 |
| 10/6/2005 | 19.77 | 14.66 | 43.46 | 4.07 |
| 10/7/2005 | 19.59 | 14.53 | 45.35 | 4.06 |
| 10/10/2005 | 19.26 | 14.28 | 43.56 | 4.10 |
| 10/11/2005 | 19.00 | 14.09 | 44.29 | 4.14 |
| 10/12/2005 | 18.34 | 13.60 | 45.73 | 4.14 |
| 10/13/2005 | 18.62 | 13.81 | 44.17 | 4.14 |
| 10/14/2005 | 18.43 | 13.67 | 47.30 | 4.15 |
| 10/17/2005 | 18.51 | 13.73 | 46.49 | 4.21 |
| 10/18/2005 | 18.50 | 13.72 | 47.24 | 4.19 |
| 10/19/2005 | 19.44 | 14.42 | 46.18 | 4.18 |
| 10/20/2005 | 19.23 | 14.26 | 47.67 | 4.20 |
| 10/21/2005 | 19.60 | 14.53 | 46.99 | 4.18 |
| 10/24/2005 | 19.74 | 14.64 | 44.91 | 4.22 |
| 10/25/2005 | 19.74 | 14.64 | 45.12 | 4.26 |
| 10/26/2005 | 19.93 | 14.78 | 44.68 | 4.27 |
| 10/27/2005 | 19.61 | 14.54 | 44.60 | 4.26 |
| 10/28/2005 | 19.64 | 14.56 | 44.40 | 4.28 |
| 10/31/2005 | 20.76 | 15.39 | 45.39 | 4.31 |
| 11/1/2005 | 20.68 | 15.34 | 47.41 | 4.31 |
| 11/2/2005 | 22.47 | 16.66 | 49.15 | 4.31 |
| 11/3/2005 | 22.38 | 16.60 | 53.21 | 4.33 |
| 11/4/2005 | 17.99 | 14.88 | 55.16 | 4.34 |
| 11/7/2005 | 16.50 | 13.96 | 57.41 | 4.36 |
| 11/8/2005 | 17.00 | 14.39 | 51.56 | 4.34 |
| 11/9/2005 | 17.79 | 15.05 | 53.92 | 4.37 |
| 11/10/2005 | 19.67 | 16.65 | 47.47 | 4.34 |

| Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) | Date | Closing Price ($) | True Value ($) | Implied Volatility (%) | Interest Rate (APR %) |
|---|---|---|---|---|---|---|---|---|---|
| 11/11/2005 | 19.18 | 16.23 | 46.08 | 4.37 | 1/13/2006 | 20.15 | 17.05 | 44.09 | 4.40 |
| 11/14/2005 | 19.22 | 16.26 | 45.25 | 4.40 | 1/17/2006 | 20.02 | 16.94 | 44.57 | 4.42 |
| 11/15/2005 | 19.52 | 16.52 | 46.80 | 4.38 | 1/18/2006 | 20.05 | 16.97 | 44.68 | 4.42 |
| 11/16/2005 | 19.18 | 16.23 | 48.32 | 4.34 | 1/19/2006 | 20.70 | 17.52 | 45.11 | 4.43 |
| 11/17/2005 | 19.05 | 16.12 | 49.15 | 4.32 | 1/20/2006 | 15.40 | 13.99 | 56.09 | 4.44 |
| 11/18/2005 | 19.51 | 16.51 | 44.57 | 4.34 | 1/23/2006 | 15.00 | 13.62 | 55.99 | 4.45 |
| 11/21/2005 | 19.55 | 16.54 | 45.97 | 4.33 | 1/24/2006 | 15.06 | 13.68 | 56.48 | 4.46 |
| 11/22/2005 | 19.68 | 16.65 | 45.70 | 4.26 | 1/25/2006 | 15.99 | 14.52 | 53.42 | 4.51 |
| 11/23/2005 | 19.68 | 16.65 | 45.62 | 4.31 | 1/26/2006 | 15.64 | 14.21 | 53.18 | 4.52 |
| 11/25/2005 | 19.51 | 16.51 | 46.02 | 4.29 | 1/27/2006 | 15.85 | 14.40 | 52.95 | 4.54 |
| 11/28/2005 | 19.17 | 16.22 | 47.01 | 4.32 | 1/30/2006 | 16.00 | 14.53 | 53.39 | 4.59 |
| 11/29/2005 | 19.09 | 16.15 | 45.71 | 4.35 | 1/31/2006 | 15.93 | 14.47 | 53.37 | 4.58 |
| 11/30/2005 | 19.02 | 16.10 | 45.14 | 4.34 | 2/1/2006 | 16.00 | 14.53 | 53.97 | 4.60 |
| 12/1/2005 | 19.65 | 16.63 | 42.91 | 4.36 | 2/2/2006 | 15.56 | 14.13 | 54.15 | 4.61 |
| 12/2/2005 | 19.63 | 16.61 | 42.13 | 4.35 | 2/3/2006 | 15.88 | 14.42 | 51.85 | 4.62 |
| 12/5/2005 | 19.50 | 16.50 | 42.44 | 4.39 | 2/6/2006 | 15.98 | 14.52 | 52.68 | 4.66 |
| 12/6/2005 | 19.51 | 16.51 | 42.88 | 4.36 | 2/7/2006 | 16.07 | 14.60 | 53.92 | 4.65 |
| 12/7/2005 | 19.38 | 16.40 | 43.39 | 4.35 | 2/8/2006 | 16.09 | 14.62 | 52.34 | 4.66 |
| 12/8/2005 | 19.22 | 16.26 | 43.85 | 4.30 | 2/9/2006 | 16.12 | 14.64 | 53.20 | 4.66 |
| 12/9/2005 | 20.63 | 17.46 | 40.40 | 4.33 | 2/10/2006 | 15.71 | 14.27 | 53.68 | 4.70 |
| 12/12/2005 | 22.03 | 18.64 | 40.19 | 4.38 | 2/13/2006 | 14.95 | 13.58 | 57.23 | 4.70 |
| 12/13/2005 | 20.95 | 17.73 | 41.35 | 4.37 | 2/14/2006 | 15.51 | 14.09 | 54.20 | 4.71 |
| 12/14/2005 | 21.28 | 18.01 | 41.82 | 4.32 | 2/15/2006 | 15.60 | 14.17 | 53.57 | 4.70 |
| 12/15/2005 | 20.54 | 17.38 | 41.16 | 4.33 | 2/16/2006 | 15.67 | 14.23 | 54.08 | 4.69 |
| 12/16/2005 | 20.54 | 17.38 | 40.44 | 4.32 | 2/17/2006 | 15.45 | 14.03 | 49.69 | 4.68 |
| 12/19/2005 | 20.77 | 17.58 | 39.30 | 4.38 | 2/21/2006 | 15.33 | 13.92 | 53.17 | 4.73 |
| 12/20/2005 | 20.59 | 17.42 | 38.77 | 4.39 | 2/22/2006 | 15.37 | 13.96 | 54.23 | 4.69 |
| 12/21/2005 | 20.85 | 17.64 | 42.07 | 4.38 | 2/23/2006 | 15.15 | 13.76 | 54.25 | 4.73 |
| 12/22/2005 | 20.82 | 17.62 | 43.20 | 4.35 | 2/24/2006 | 14.36 | 13.24 | 47.26 | 4.73 |
| 12/23/2005 | 20.61 | 17.44 | 42.94 | 4.33 | 2/27/2006 | 14.73 | 13.58 | 46.00 | 4.76 |
| 12/27/2005 | 20.04 | 16.96 | 43.81 | 4.35 | 2/28/2006 | 15.99 | 14.74 | 45.24 | 4.73 |
| 12/28/2005 | 20.12 | 17.03 | 44.15 | 4.34 | 3/1/2006 | 15.97 | 14.72 | 44.34 | 4.74 |
| 12/29/2005 | 19.96 | 16.89 | 44.54 | 4.35 | 3/2/2006 | 15.85 | 14.61 | 45.03 | 4.74 |
| 12/30/2005 | 20.00 | 16.92 | 43.40 | 4.38 | 3/3/2006 | 15.95 | 14.70 | 44.70 | 4.75 |
| 1/3/2006 | 20.29 | 17.17 | 43.83 | 4.38 | 3/6/2006 | 15.72 | 14.49 | 44.89 | 4.77 |
| 1/4/2006 | 20.44 | 17.30 | 44.24 | 4.35 | 3/7/2006 | 15.74 | 14.51 | 45.26 | 4.77 |
| 1/5/2006 | 20.45 | 17.31 | 44.12 | 4.36 | 3/8/2006 | 15.49 | 14.28 | 45.84 | 4.76 |
| 1/6/2006 | 19.48 | 16.48 | 45.56 | 4.38 | 3/9/2006 | 15.70 | 14.47 | 45.17 | 4.76 |
| 1/9/2006 | 19.97 | 16.90 | 44.21 | 4.39 | 3/10/2006 | 15.93 | 14.68 | 44.38 | 4.77 |
| 1/10/2006 | 20.04 | 16.96 | 44.09 | 4.42 | 3/13/2006 | 15.86 | 14.62 | 44.33 | 4.80 |
| 1/11/2006 | 20.09 | 17.00 | 44.05 | 4.44 | 3/14/2006 | 16.03 | 14.77 | 46.47 | 4.75 |
| 1/12/2006 | 20.02 | 16.94 | 43.82 | 4.42 | 3/15/2006 | 16.41 | 15.12 | 43.24 | 4.77 |

**General Provisions:**

1.  The date of purchase or sale is the "contract" or "trade" date and not the "settlement" date.

2.  In processing claims, the first-in, first-out basis ("FIFO") will be applied to purchases and sales.

3.  Brokerage commissions, fees, and taxes should be excluded in the purchase and sale prices of FARO securities.

4.  Gifts and transfers are not eligible purchases.

**[THIS PAGE INTENTIONALLY LEFT BLANK]**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

IN RE FARO TECHNOLOGIES
SECURITIES LITIGATION

Case No. 6:05-cv-1810-Orl-22DAB

## PROOF OF CLAIM AND RELEASE

### I.   GENERAL INSTRUCTIONS

1.   To recover as a member of the Class based on your claims in the action entitled *In re FARO Technologies Securities Litigation*, Case No. 6:05-cv-1810-Orl-22DAB, you must complete and, on page 23 hereof, sign this Proof of Claim and Release. If you fail to file a properly addressed (as set forth in paragraph 3 below) Proof of Claim and Release, your claim may be rejected and you may be precluded from any recovery from the Settlement Fund created in connection with the proposed Settlement of the Litigation.

2.   Submission of this Proof of Claim and Release, however, does not assure that you will share in the proceeds of Settlement in this Litigation.

3.   YOU MUST MAIL YOUR COMPLETED AND SIGNED PROOF OF CLAIM AND RELEASE POSTMARKED ON OR BEFORE OCTOBER 30, 2008 ADDRESSED AS FOLLOWS:

*FARO Shareholder Litigation*
Claims Administrator
c/o Strategic Claims Services
600 North Jackson Street, Suite 3
Media, PA 19063

If you are NOT a member of the Class, as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), DO NOT submit a Proof of Claim and Release form.

4.   If you are a member of the Class, you are bound by the terms of any judgment entered in the Litigation, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM AND RELEASE FORM.

### II.   DEFINITIONS

1.   "Class" means all persons (as defined in the Parties' Stipulation of Settlement) who purchased or otherwise acquired the common stock and/or other publicly-traded securities of FARO Technologies, Inc. ("FARO") during the period April 15, 2004 (after the close of trading) through and including March 15, 2006. Excluded from the Class are Defendants and members of each Individual Defendant's immediate family, any entity in which a Defendant has a controlling interest, and the legal representatives, heirs, successors, predecessors in interest or assigns, of any such excluded party. Also excluded from the Class are the Judge(s) to whom this case is assigned and those persons who submit a valid request to be excluded from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

2.   "Class Period" means the time period April 15, 2004 (after the close of trading) to and including March 15, 2006.

3.   "Defendants" means FARO and Simon Raab, Gregory A. Fraser and Barbara R. Smith.

### III.   CLAIMANT IDENTIFICATION

1.   If you purchased or otherwise acquired the common stock and/or other publicly-traded securities of FARO and held the certificate(s) in your name, you are the beneficial purchaser as well as the record purchaser. If, however, the certificate(s) were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial purchaser and the third party is the record purchaser.

2.   Use Part 1 of this form, which is entitled "Claimant Identification," to identify each purchaser of record ("nominee"), if different from the beneficial purchaser of FARO securities. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL PURCHASER OR PURCHASERS, OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER OR PURCHASERS OF FARO SECURITIES UPON WHICH THIS CLAIM IS BASED.

3.   All joint purchasers must sign this claim. Executors, administrators, guardians, conservators and trustees must complete and sign this claim on behalf of the Persons represented by them and their authority must accompany

this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## IV.  CLAIM FORM

1.    Use Part II of this form, which is entitled "Schedule of Transactions in FARO securities," to supply all required details of your FARO securities purchases and sales during the Class Period. If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

2.    On the schedules, provide all of the requested information with respect to *all* of your purchases and *all* of your sales of FARO securities which took place at any time between April 15, 2004 (after the close of trading) and March 15, 2006, inclusive, whether such transactions resulted in a profit or a loss. Failure to report all such transactions may result in the rejection of your claim.

3.    List each transaction in the Class Period separately and in chronological order, by trade date, beginning with the earliest. You must accurately provide the month, day and year of each transaction you list.

4.    Broker confirmations or other documentation of your transactions in FARO securities should be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim.

5.    The above requests are designed to provide the minimum amount of information necessary to process the most simple claims. The Claims Administrator may request additional information as required to efficiently and reliably calculate your losses. In some cases where the Claims Administrator cannot perform the calculation accurately or at a reasonable cost to the Class with the information provided, the Claims Administrator may condition acceptance of the claim upon the production of additional information and/or the hiring of an accounting expert at the Claimant's cost.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO TAMPA DIVISION

*In re FARO Technologies Securities Litigation*

Case No. 6:05-cv-1810-Orl-22DAB

## PROOF OF CLAIM AND RELEASE

**Must Be Postmarked No Later Than: October 30, 2008**

*Please Type or Print*

## PART I:  CLAIMANT IDENTIFICATION

Beneficial Owner's Name (First, Middle, Last)

Record Owner's Name (First, Middle, Last) (if different from beneficial owner listed above)

Street Address

City                                                                        State            Zip Code

Foreign Province                                                     Foreign Country

Social Security Number: ___-__-____  OR  Taxpayer Identification Number: __-_____
(for individuals)                                                    (for estates, trusts, corporations, etc.)

Check one:

☐ Individual(s)    ☐ Corporation    ☐ Other (specify) _____

Area Code  Telephone Number (Work)    Area Code  Telephone Number (Home)    Area Code  Fax Number

E-Mail Address

## PART II:  SCHEDULE OF TRANSACTIONS IN FARO SECURITIES COMMON STOCK

A.  Number of shares of common stock held by you at the close of trading on April 15, 2004: _____

B.  Purchases of FARO common stock (after the close of trading on April 15, 2004 through, and including, March 15, 2006):

| | Trade Date (List Chronologically) (Month / Day / Year) | Number of Shares Purchased | Total Purchase Price (excluding commissions) |
|---|---|---|---|
| 1. | __/__/__ | | $ _____.__ |
| 2. | __/__/__ | | $ _____.__ |
| 3. | __/__/__ | | $ _____.__ |

**IMPORTANT:** Identify all purchases in which you covered a "short sale": _____

C.  Between March 16, 2006 and June 13, 2006, inclusive, you purchased a total of shares of FARO common stock: _____ (If none, write 0)

D.  Sales of FARO common stock (April 15, 2004 – June 13, 2006, inclusive):

| | Trade Date (List Chronologically) (Month / Day / Year) | Number of Shares Sold | Total Sale Proceeds (excluding commissions) |
|---|---|---|---|
| 1. | ☐☐ / ☐☐ / ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐☐.☐☐ |
| 2. | ☐☐ / ☐☐ / ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐☐.☐☐ |
| 3. | ☐☐ / ☐☐ / ☐☐ | ☐☐☐☐☐☐ | $☐☐☐☐☐☐.☐☐ |

E.  Number of shares of FARO common stock held by you on June 13, 2006: _____

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

**Note:** To check to see if you have accounted for all your common shares, please be sure the beginning balance of common shares you held at the close of trading on April 15, 2004 (II A. above), plus purchases of common shares (II B. and II C. above), less sales of common shares (II D. above), is equal to the ending balance of common shares you held at the close of trading on June 13, 2006 (II E. above).

F.  **Acquisitions of FARO Options**

1.  Beginning Holdings of FARO Options. Please state the number of FARO options that you owned at the close of trading on April 15, 2004:

| Option Type | Number of contracs | Date & strike price option contract (i.e., 10/$50) (List Chronologically) (Month / Day / Year) | Total amount paid for option contracts (excluding commissions) | Proof enclosed |
|---|---|---|---|---|
| Put ☐  Call ☐ | ☐☐☐ | ☐☐ / ☐☐ / ☐☐ | $☐☐☐☐☐☐.☐☐ | Y ☐  N ☐ |
| Put ☐  Call ☐ | ☐☐☐ | ☐☐ / ☐☐ / ☐☐ | $☐☐☐☐☐☐.☐☐ | Y ☐  N ☐ |
| Put ☐  Call ☐ | ☐☐☐ | ☐☐ / ☐☐ / ☐☐ | $☐☐☐☐☐☐.☐☐ | Y ☐  N ☐ |

2.  Acquisitions of FARO Options. List by date, number of option contracts acquired, price paid per contract, expiration date (month/year), and strike price for each acquisition of FARO option contracts from after the close of trading on April 15, 2004 through March 15, 2006, inclusive. Please indicate if option was assigned, exercised or expired. If none, check here ☐

| Option Type | Dates of acquisition (List Chronologically) (Month / Day / Year) | No. of Option Contracts | Expiry month & year | Strike price | Acquisition price per Option Contract (excluding commissions) | [X] expired [A] assigned [E] exercised | Proof of acquisition enclosed |
|---|---|---|---|---|---|---|---|
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |
| Put | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | Y ☐ |
| Call | ☐☐ / ☐☐ / ☐☐ | ☐☐☐ | ☐☐ / ☐☐ | $☐☐☐☐.☐☐ | $☐☐☐☐☐.☐☐ | ☐ | N ☐ |

3. <u>Sales of FARO Options</u>. List by date, number of option contracts sold, price received per contract, expiration date (month/year), and strike price for each sale of FARO option contracts from April 15, 2004 through March 15, 2006, inclusive. Please indicate if option was assigned, exercised or expired. If none, check here ☐

| Option Type | Dates of sale (List Chronologically) (Month / Day / Year) | No. of Option Contracts Sold | Expiry month & year | Strike price | Sale price per Option Contracts (excluding commissions) | [X] expired [A] assigned [E] exercised | Proof of Sale enclosed |
|---|---|---|---|---|---|---|---|
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |
| Put | ☐ / ☐ / ☐ | ☐ | ☐ / ☐ | $☐.☐ | $☐.☐ | ☐ | Y ☐ |
| Call | | | | $☐.☐ | $☐.☐ | ☐ | N ☐ |

4. <u>Unsold Holdings of FARO Options</u>. Please state the number of FARO options that you owned as of the close of trading on March 15, 2006. If none, check here ☐

| Option Type | | Number of contracs | Date & strike price Option Contracts (i.e., 10/$50) (List Chronologically) (Month / Day / Year) | Total amount paid for Option Contracts (excluding commissions) | Proof enclosed | |
|---|---|---|---|---|---|---|
| Put ☐ | Call ☐ | ☐ | ☐ / ☐ / ☐ | $☐.☐ | Y ☐ | N ☐ |
| Put ☐ | Call ☐ | ☐ | ☐ / ☐ / ☐ | $☐.☐ | Y ☐ | N ☐ |
| Put ☐ | Call ☐ | ☐ | ☐ / ☐ / ☐ | $☐.☐ | Y ☐ | N ☐ |

**Note:** To check and see if you have accounted for all your options, please be sure the beginning balance of options you held at the close of trading on April 15, 2004 (F 1. above), plus purchases of options (F 2. above), less sales of options (F 3. above) is equal to the ending balance of options you held at the close of trading on March 15, 2006 (F 4. above).

YOU MUST READ AND SIGN THE RELEASE ON PAGE 23.

## PART III. <u>SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS</u>

I (We) submit this Proof of Claim and Release under the terms of the Stipulation of Settlement dated as of April 9, 2008 ("Stipulation") described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Middle District of Florida, Orlando Division, with respect to my claim as a Class Member (as defined in the Notice) and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Litigation. I (We) agree to furnish additional information to the Claims Administrator or Plaintiffs' Co-Lead Counsel to support this claim if required to do so. I (We) have not submitted any other claim covering the purchases of FARO securities during the relevant time period and know of no other Person having done so on my (our) behalf.

## PART IV. <u>RELEASE</u>

1. "Released Claims" collectively means any and all claims (including "Unknown Claims" as defined below), demands, rights, causes of action or liabilities, of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in any forum by the Class Members, or any of them, or the successors or assigns of any of them, whether directly, indirectly, derivatively, representatively

or in any other capacity against any of the Released Parties (as defined below), which arise out of, or relate in any way, directly or indirectly, to the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or that could have been asserted in the Litigation, including, without limitation, claims for negligence, gross negligence, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, and breach of fiduciary duty, arising out of, based upon or related in any way to the purchase, acquisition, sale or disposition of FARO common stock or other publicly-traded securities by any Class Member during the Class Period. Specifically excluded are any claims asserted in the following pending action: *Alverson v. Caldwell et al,* 6:08-cv-00045-ACC-DAB (M.D.Fla.).

2.    "Released Parties" means Lead Plaintiff, the Class, Plaintiffs' Counsel, Defendants, Grant Thornton LLP, Ernst & Young LLP, Deloitte & Touche LLP, and their respective past or present affiliates, parents, subsidiaries, representatives, shareholders, creditors, partners, principals, officers, directors, employees, insurers, reinsurers, professional advisors, financial advisors, accountants, auditors, associates, general and limited partners and partnerships, heirs, executors, administrators, attorneys, agents, successors in interest (including but not limited to a trustee appointed in a Chapter 7 or 11 proceeding, a receiver, an assignee for the benefit of creditors, or any similar successors other than securities broker dealers who were not named as parties in the Amended Complaint), and assigns.

3.    "Unknown Claims" means any Released Claims (as defined above) that Lead Plaintiff or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Parties, or might have affected his, her or its decision(s) not to object to this Settlement. Upon the Effective Date (as defined in the Stipulation), the Settling Parties, and all other Persons and entities whose claims are being released, shall be deemed to have, or shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of §1542 of the California Civil Code, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Lead Plaintiff, Defendants and the Released Parties have, and each of the Class Members shall be deemed to have and – by operation of the Judgment – shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable and equivalent to California Civil Code § 1542. The Lead Plaintiff, Defendants and the Released Parties may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiff and each Class Member, upon the Effective Date, shall be deemed to have, and – by operation of the Judgment – shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to subsequent discovery or existence of such different or additional facts. Lead Plaintiff and the Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver of Unknown Claims was separately bargained for and a key element of the Settlement of which this release is a part.

4.    I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally and forever settle, release, relinquish and discharge, all of the Released Claims (as defined above) against Defendants, Grant Thornton LLP, Ernst & Young LLP, Deloitte & Touche LLP, and their respective past or present affiliates, parents, subsidiaries, representatives, shareholders, creditors, partners, principals, officers, directors, employees, insurers, reinsurers, professional advisors, financial advisors, accountants, auditors, associates, general and limited partners and partnerships, heirs, executors, administrators, attorneys, agents, successors in interest (including but not limited to a trustee appointed in a Chapter 7 or 11 proceeding, a receiver, an assignee for the benefit of creditors, or any similar successors other than securities broker dealers who were not named as parties in the Amended Complaint), and assigns.

5.    This release shall be of no force or effect unless and until the Court issues a Final Judgment approving the Stipulation and it becomes effective on the Effective Date.

6.    I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

7.    I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in FARO securities that occurred during the time period covered by this Proof of Claim, and the number of FARO common stock shares held by me (us) at the close of trading on April 15, 2004 and at the close of trading on June 13, 2006; and, if applicable, the number of FARO options held by me (us) at the close of trading on April 15, 2004 and at the close of trading on March 15, 2006.

# SUBSTITUTE FORM W-9

### Request for Taxpayer Identification Number ("TIN") and Certification

## SECTION I

NAME: _____

Check appropriate box:  ☐ Individual/Sole Proprietor   ☐ Corporation   ☐ Partnership   ☐ Trust
☐ IRA   ☐ Pension Plan   ☐ Other _____

Enter TIN on appropriate line.

For individuals, this is your Social Security Number ("SSN").

For sole proprietors, you must show your individual name, but you may also enter your business name or "doing business as" name. You may enter either your SSN or your Employer Identification Number ("EIN").

For other entities, it is your EIN.

___ ___ ___ – ___ ___ – ___ ___ ___ ___     or     ___ ___ – ___ ___ ___ ___ ___ ___ ___
       Social Security Number                                    Employer Identification Number

## SECTION II

### For Payees Exempt from Backup Withholding

If you are exempt from backup withholding, enter your correct TIN in Section I and write "exempt" on the following line: _____.

## SECTION III

### Certification and Release

UNDER THE PENALTY OF PERJURY, I (WE) CERTIFY THAT:

1. The number shown on this form is (our) my correct TIN; and

2. I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a) (1)(C) of the Internal Revenue Code because: (a) I am (we are) exempt from backup withholding; or (b) I (we) have not been notified by the Internal Revenue Service that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the Internal Revenue Service has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:  If you have been notified by the Internal Revenue Service that you are subject to backup withholding, you must cross out Item 2 above.

### SEE ENCLOSED FORM W-9 INSTRUCTIONS

The Internal Revenue Service does not require your consent to any provision of this document other than the certification required to avoid backup withholding.

**I (We) declare and certify that I (we) understand that, by executing this Certification and Release, I (we) are specifically releasing and giving up forever all of the Released Claims against the Released Parties identified in Part IV of this Proof of Claim and Release Form.**

I (We) declare under penalty of perjury under the laws of the United States of America that the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____ (Month/Year),

in _____, _____.
                            (City)                                                (State/Country)

_____          _____
(Sign your name here)                                             (Type or print your name here)

_____          _____
(Signature of Joint Claimant, if any)                          (Type or print your name here)

_____
(Capacity of person(s) signing, *e.g.,* Beneficial Purchaser, Executor, Administrator, Trustee, etc.)

QUESTIONS? VISIT WWW.STRATEGICCLAIMS.NET OR CALL 1-866-274-4004

In re FARO Technologies Securities Litigation
Claims Administrator
c/o Strategic Claims Services
P.O. Box 230
600 N Jackson Street, Suite 3
Media, PA 19063

```
FIRST CLASS MAIL
U.S. POSTAGE
PAID
PERMIT NO. 138
PHILADELPHIA, PA
```

# FIRST CLASS MAIL

## PLEASE FORWARD—IMPORTANT LEGAL NOTICE

### ACCURATE CLAIMS PROCESSING TAKES A
### SIGNIFICANT AMOUNT OF TIME.
### THANK YOU FOR YOUR PATIENCE.

**Reminder Checklist:**

1. Please sign the above certification and release.

2. Remember to attach supporting documentation.

3. Do not send original stock certificates.

4. Keep a copy of your Proof of Claim form for your records.

5. If you desire an acknowledgment of receipt of your Proof of Claim form, please send it Certified Mail, Return Receipt Requested.

6. If you move, please send us your new address.

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

IN RE FARO TECHNOLOGIES      )      Case No. 6:05-cv-1810-Orl-22DAB
SECURITIES LITIGATION         )
_____)

### FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE

      This matter came before the Court for hearing pursuant to an Order of this Court dated

June 2, 2008 granting preliminary approval of a settlement ("Settlement") and providing for

notice to the class that was preliminarily certified for purposes of settlement ("Class"), on the

application of the Settling Parties for approval of the Settlement set forth in the Stipulation of

Settlement dated as of April 9, 2008 (the "Stipulation").  Due and adequate notice of the

Settlement having been given as required in the Court's Order dated June 2, 2008, and the Court

having considered all papers filed and proceedings had herein and otherwise being fully informed

in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED

AND DECREED that:

           1.      This Judgment incorporates by reference the definitions in the Stipulation,

and all terms used herein shall have the same meanings as set forth in the Stipulation.

           2.      This Court has jurisdiction over the subject matter of the Litigation and

over all parties to the Litigation, including all Members of the Class.

           3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court

hereby certifies a Class for purposes of this Settlement.  The Class is defined as all Persons who

purchased the securities or otherwise acquired the publicly-traded securities of FARO during the

period April 15, 2004 through and including March 15, 2006.  Excluded from the Class are

Defendants and members of each Individual Defendant's immediate family, any entity in which a

Defendant has a controlling interest, and the legal representatives, heirs, successors-predecessors in interest or assigns, of any such excluded party. Also excluded from the Class are the Judge(s) to whom this case is assigned.

    4.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement set forth in the Stipulation, and approves the Plan of Allocation set forth in the Notice, and finds that said Settlement is, in all respects, fair, reasonable and adequate, and is in the best interest of the Lead Plaintiff, the Class and each of the Class Members. This Court further finds the Settlement set forth in the Stipulation is the result of arm's-length negotiations between experienced counsel representing the interests of the Lead Plaintiff, the Class Members and the Defendants. Accordingly, the Settlement embodied in the Stipulation is hereby approved in all respects and shall be consummated in accordance with its terms and provisions. The Settling Parties are hereby directed to perform the terms of the Stipulation.

    5.  The Litigation, as well as all of the Released Claims and Released Defendants' Claims, are hereby dismissed with prejudice. Except as otherwise provided in this Order and the Stipulation, the parties are to bear their own costs.

    6.  Upon the Effective Date hereof, and in consideration of (a) FARO's agreement to cause its Insurers to pay the amount of $6,875,000 (the "Cash Settlement Amount"), and (b) Defendants' and their Released Parties' release of Defendants' Released Claims, as set forth in the Stipulation, Lead Plaintiff and each Class Member (and their Released Parties, as defined in the Stipulation), shall be deemed to have, and by operation of the Judgment shall: (1) fully, finally, and forever release, relinquish and discharge all Released Claims against

-2-

Defendants, and each of them, and each of their Released Parties, whether or not such Class Member executes and delivers a Proof of Claim and Release; and (2) refrain from instituting, commencing, prosecuting, or cooperating with, either directly or indirectly, representatively, or in any other capacity, any and all Released Claims.

7.    All Class Members are hereby forever enjoined from instituting, commencing, prosecuting, or cooperating with, either directly or indirectly, representatively, or in any other capacity, any and all Released Claims against any of the Released Parties, whether or not such Class Member executes and delivers the Proof of Claim and Release, or otherwise shares in the Settlement Fund.

8.    Upon the Effective Date hereof, and in consideration of the releases to be provided by Lead Plaintiff, the Class, and all members thereof, Defendants, and each of them (and their Released Parties as defined in the Stipulation), shall be deemed to have, and by operation of this Judgment shall have, fully, finally and forever release, relinquish and discharge Lead Plaintiff, Class Members, Plaintiffs' Co-Lead Counsel, Plaintiffs' Counsel and each of them, and each of their Released Parties, from all Released Defendants' Claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims.

9.    The Notice of Pendency and Proposed Settlement of Class Action given to the Class was the best notice practicable under the circumstances, including individual notice to all Members of the Class who could be identified through reasonable effort. Said Notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Stipulation and the

Settlement hearing thereon, to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

10.     The Court hereby approves the Plan of Allocation as set forth in the Notice distributed to the Class.

11.     Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission, concession or evidence of, the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by Lead Plaintiff and the Class, the sufficiency or deficiency of any defense that has been or could have been asserted in the Litigation, or of any alleged wrongdoing, liability, negligence, fault of the Defendants and their Released Parties, or any of them; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by any of the Defendants, or any of their Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) is or may be deemed to be or shall be used, offered or received against the Defendants and their Released Parties, Lead Plaintiff and the Class, or each or any of them, as an admission, concession or evidence of, the validity or invalidity of any of the Released Defendants' Claims, the infirmity or strength of any claims raised in the Litigation, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Litigation; or (d) is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against the Parties and their Released Parties, or each or any of them, that any of the Lead

-4-

Plaintiff's claims are with or without merit, that damages recoverable under the Lead Plaintiff's operative complaint would have been greater or less than the Cash Settlement Amount or that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount which could have or would have been recovered after trial. Any of the Settling Parties or any of their Released Parties may file the Stipulation and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of this Settlement; (b) disposition of the Settlement Fund, including interest earned thereon; (c) determination of applications for attorneys' fees and expenses in the Litigation; and (d) all Parties hereto for the purpose of construing, enforcing and administering the Stipulation, this Settlement and this Judgment.

13.    The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

14.    Lead Counsel are awarded fees in the amount of 30% of the Settlement Fund, plus reimbursement of expenses in the amount of $182,781.80, plus interest to the same extent that interest has been earned on the Settlement Fund, both to be paid from the Settlement Fund pursuant to the terms of the Stipulation. Lead Counsel may, at their discretion, thereafter allocate the attorneys' fees among Plaintiffs' Counsel in a manner in which they in good faith

-5-

believe reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

        15.    In the event that the Settlement does not become effective in accordance with the terms of the Stipulation or in the event that the Settlement Fund, or any portion thereof, is returned to the Defendants, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Stipulation.

        IT IS SO ORDERED this _____ day of _____, 2008.


_____
THE HONORABLE ANNE C. CONWAY
UNITED STATES DISTRICT JUDGE

-6-

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 26, 2008, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system and thereby served all counsel of record

electronically with this pleading.

By:    /s/ Scott R. Shepherd
       Trial Counsel
       Scott R. Shepherd
       Fla. Bar No. 069655
       Shepherd, Finkelman, Miller & Shah, LLC
       Fla. Bar No. 069655
       1640 Town Center Circle
       Weston, FL 33326
       (Telephone) (954) 943-9191
       (Facsimile) (954) 943-9173
       (Electronic mail) sshepherd@sfmslaw.com

       Attorney for Lead Plaintiff,
       Kornitzer Capital Management, Inc.